PETER B. MARETZ, SBN 144826
pmaretz@stokeswagner.com
OMAR V. HERNANDEZ, SBN 340089
ohernandez@stokeswagner.com
STOKES WAGNER ALC
600 West Broadway, Suite 910
San Diego, CA 92101
Telephone:  (619) 232-4261
Facsimile:  (619) 232-4840

Attorneys for Plaintiff SAJAHTERA, INC.
dba THE BEVERLY HILLS HOTEL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| SAJAHTERA, INC., a Delaware Corporation, dba THE BEVERLY HILLS HOTEL<br><br>       Plaintiff,<br><br> v.<br><br>KITROSS APPAREL LOS ANGELES, LLC, a California limited liability company; and DOES 1 through 50,<br><br>       Defendants. | Case No: 2:23-cv-08005- MWF-KS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Date: January 8, 2023**<br>**Time: 10 a.m.**<br>**Judge: Michael W. Fitzgerald**<br>**Courtroom: 5A** |

# Table of Contents

**I.   INTRODUCTION** .................................................................................**5**

**II.  FACTUAL BACKGROUND** ...................................................**6**

**III. LEGAL AUTHORITY** .......................................................**9**

**IV. LEGAL ARGUMENT** ..........................................................**10**

   A.   THE COURT SHOULD NOT DISMISS THE COMPLAINT AT THE PLEADING STAGE BEFORE THE PARTIES ENGAGE IN MEANINGFUL DISCOVERY TO PROVE THE MERITS OF THE CASE ..........................................................................10

   B.   KITROSS PURPOSEFULLY USES THE HOTEL'S MARK TO ASSOCIATE ITS GOODS/ PRODUCTS TO THE HOTEL AND TO IDENTIFY THE SOURCE OF THE GOODS .............12

   C.   THE HOTEL HAS ALLEGED SUFFICIENT FACTS FOR CLAIM OF DILUTION .......18

      *1.   The Hotel Can Prove Its Mark Is Famous*...................................*18*

      *2.   Kitross Ignores the Use of a Nearly Identical Mark, Including Lettering and Font Uses*..................................................................*20*

   D.   THE HOTEL'S COMPLAINT ALLEGES FACTS TO SUPPORT A CLAIM FOR UNFAIR COMPETITION CALIFORNIA'S BUSINESS & PROFESSIONS CODE § 17200...............20

**V.   CONCLUSION** .........................................................................**21**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# **Table of Authorities**

<u>Cases</u>

*A & H Sportswear, Inc. v Victoria's Secret Stores, Inc.,* 237 F.3d 198 (3d Cir. 2000) ................................................................................................12

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198 (3d Cir. 2000) ......................................................................................11

*Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1088 (C.D. Cal. 2012) .................................................................................................8

*Au-Tomotive Gold, Inc. v. Volkswagen of Am. Inc.* (9th Cir. 2006) 457 F.3d 1062 ..9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 663 (2007) ....................................8

*Cove USA LLA v. No Bad Days Enterprises, Inc.,* No. 820CV02314JLSKES, 2022 WL 423399 (C.D. Cal. Jan. 5, 2022) .........................................................16

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.* (C.D. Cal 2012) 925 F.Supp.2d 1067, 1074 .............................................................................................9, 15

*Four Seasons Hotels and Resorts B.V v. Consorcio Barr, S.A.* .............................17

*Grey v. Campbell Soup Co.*, 650 F.Supp. 1166, 1173 (C.D.Cal.1986)...................19

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1031 (C.D.Cal.2011)..................................................................................19

*Intel Corp v Terabyte Int'l, Inc.*, 6 F.3d, 614, 618-19. (9th Cir. 1993) ...................17

*International Order of Job Daughters v. Lindeburg & Co.* 633 F.2d 912 (9th Cir.1980) ......................................................................................13

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) ...................................8

*Kythera Biopharmaceuticals, Inc. v Lithera, Inc.* (C.D. Cal. 2014) 998 F.Supp.2d 890, 897 ........................................................................................8

*Lepton Labs, LLC v. Walker,* 55 F. Supp. 3d at 1240 .....................................10

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) .....................................10

*LTTB LLC v. Redbubble Inc.*, 840 F. App'x 148 (9th Cir. 2021)..........................16

*Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008) ...............................................................................................10

*Morongo Band of Mission Indians v. Rose,* 893 F. 2d 1074, 1079 (9th Cir. 1990) ..10

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ......................................8

*New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (9th Cir.1979) ......................................................................................19

*Pagliero v. Wallace China Co.,* 198 F.2d 339, 343 (9th Cir. 1952) ......................12

*Playboy Enters. Inc. v. Welles* (9th Cir. 2002) 279 F.3d 796, 806, n. 41................19

*Stone Brewing Co., LLC v. MillerCoors LLC* .............................................17

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)...................................8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511]).......................................8

*Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group* (C.D. Cal. May 6, 2016), 2016 WL 6138416, *2 .............................................................................10

*Trek Bicycle Corp., 305 F.3d at 906* ............................................................ 19

*Two Pesos, Inc., v. Taco Cabana, Inc.,* (1992) 505 U.S. 763, 768 ................. 11, 12

*Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 772, 779 (9th Cir. 1981) ........................................................................................................... 12

Statutes

§32(1) ........................................................................................................... 19

§43(a) ........................................................................................................... 19

15 U.S.C §1125 (c) ...................................................................................... 17

15 U.S.C §1125 (c)(2) .................................................................................. 17

15 U.S.C §1125 (c)(2)(A)(i)-(iv) ................................................................. 18

15 U.S.C. §1114(1) ...................................................................................... 19

15 U.S.C. §1125(a) ...................................................................................... 20

15 U.S.C. §1127 ........................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ................................................................................. 8

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I.      INTRODUCTION

A true desire for guest-experience-excellence and high-quality standards by The Beverly Hills Hotel over 100 years has built the Hotel's brand into one of the most iconic and recognizable hotels in the United States and throughout the world.

The Hotel opposes Defendant Kitross Apparel, LLC's motion to dismiss and requests this  Court deny Defendant's motion to dismiss the trademark infringement claim because (1) the pleading stage is not the time to test legal merits of the case when little more than allegations and summary denial of them are before the Court, (2) the Hotel's registered trademark is instantly recognizable and Defendant uses the mark as *source identifyin*g and not aesthetically functional, and (3) even if the trademark has some functional element, the functional aspect of the trademark is incidental to its purpose of identifying the source of the mark.

The Court should deny the Defendant's motion to dismiss claim of dilution because the Hotel's mark is truly famous, not distinctive, and the court should give the Hotel the opportunity to prove its dilution claim, not dismiss the claim before engaging in this fact-intensive analysis. Defendant mistakenly confuses the exact nature of their infringement by focusing on the fact that Defendant's merchandise does not include the word "hotel," but fails to acknowledge that Defendant uses the *exact* stylized lettering and font as the Hotel's registered mark. The Hotel holds trademark protection to both the words "Beverly Hills Hotel" *and* the Hotel's distinct stylized lettering/font used to identify the name of the hotel ("Mark"). Thus, the Court should deny the Defendant's motion to dismiss as without merit.  Alternatively, the Court should dismiss the motion as premature and allow the parties to engage in discovery to thoroughly litigate the claims brought forth.

For the reasons above, the Court should deny the motion to dismiss the unfair competition claim because Defendant does not provide this Court with substantive arguments or facts as to why the Hotel cannot prove (or should be precluded from attempting to prove) unfair competition. Rather, Defendant merely assumes the

trademark claims will fail, before litigating and conducting discovery on the claims, and likewise assumes the unfair competition claim fails. The Court should not even consider the Defendant's analysis regarding the unfair competition claim because Defendant makes no credible or persuasive arguments. As instructed by the authority cited below, the Court should allow the Hotel the opportunity to prove its claims in litigation instead of dismissing all claims prematurely at the pleading stage.

## II.   FACTUAL BACKGROUND

The Hotel was built in 1912, before there was even a city called Beverly Hills. (See Declaration of Brittany Williams ¶ 4 ("Williams Dec.")) The Hotel is recognized as one of the most iconic and luxurious hotels in the world with celebrity clientele and exceptional service. (Williams Dec. ¶ 5) In the 1940s, the Hotel underwent a major renovation and hired an iconic architect of that time, Paul Revere Williams ("Mr. Williams"), who designed several other iconic Los Angeles structures and designed homes for various celebrities. (Williams Dec. ¶ 10) As part of that renovation, Mr. Williams designed multiple aspects of the Hotel including its Crescent Wing, the notorious Polo Lounge. While he is not responsible for the mission-style structure that is the central building of the Hotel, the Crescent Wing, which includes the striking façade bearing the Hotel's logo at issue in this litigation, is his work product. In fact, that logo is Paul Revere Williams *handwriting.* (Williams Dec. ¶ 11) The Hotel logo and its distinctive font is not just a trademark concocted by some marketing consultant, in many ways it defines the heritage of the Hotel (Williams Dec. ¶ 12)

The Hotel first registered the Mark "The Beverly Hills Hotel" in text and in the stylized lettering used on its façade, signs, public relations materials, website, and merchandise on July 26, 1988. (Williams Dec. ¶ 6) To date, the Hotel has retained federal trademark protection for over 35 years (Williams Dec. ¶ 7)

In 2012, the Hotel was named the first historic landmark of Beverly Hills. (Williams Dec. ¶ 8) The Hotel is one of the most, if not the most, recognizable hotels

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

in the world having been featured in various films, television shows etc. – and its stylized lettering and trademark of "The Beverly Hills Hotel" is just as reputable and recognizable in the public eye. (Williams Dec. ¶ 9)

Kitross is a corporation with its principal place of business in Los Angeles, California. (*Id.*, ¶ 6; see Declaration of Jeremy D. Smith ["Smith Decl.], ¶ 2.) Kitross operates three brick-and-mortar storefronts, including one located at 420 North Beverly Drive, Beverly Hills, California 90210 – approximately 2 miles away from the Hotel. It also operates an online store, which can be found at www.kitsonlosangeles.com.

On or about August 11, 2023, the Hotel received an email communication from a patron of the Hotel, Robbie Anderson ("Mr. Anderson") (Williams Dec. ¶ 13). Mr. Anderson's email contained a photograph depicting Kitross selling, in its Beverly Hills location, a variety of clothing, products, and accessories with the words "Beverly Hills" written in the Hotel's protected stylized lettering. (Williams Dec. ¶ 14) Mr. Anderson emailed the Hotel immediately and stated, "your logo is all over the place" referring to Kitross's Beverly Hills storefront. (Williams Dec. ¶ 14) The products included but were not limited to a green sweatshirt and a pink hoodie which were sold both inside Kitross's Beverly Hills location and their online store. As shown in Mr. Anderson's photograph, Kitross, to market its brand and associate itself with the Hotel, uses a confusingly similar and almost identical banana leaf wallpaper that is widely associated with the Hotel as it has been featured throughout guest room hallways and the Hotel's iconic Fountain Coffee Room since 1949. (Williams Dec. ¶ 16) In fact, the Hotel's gift shop, which is actually known as the Signature Shop, features souvenir items including t-shirts, sweatshirts and other apparel items with the Hotel's protected logo in pink and green as well as incorporating the banana leaf print, just as Kitross was selling without authorization from the Hotel. (Williams Dec. ¶ 17)

/ / /

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

On August 31, 2023, the Hotel promptly sent a letter to Kitson Los Angeles ("Kitson") alleging trademark infringement, trademark dilution, and violation of California's unfair competition law, and demanded that Kitson immediately cease and desist.

On or around September 6, 2023, Fraser Ross, the owner of Kitson and Kitross, called The Hotel's counsel to discuss the cease-and-desist letter. On September 10, 2023, Mr. Ross sent an email to the Hotel's counsel responding to the August 31, 2023, cease and desist letter. Without denying trademark infringement, Mr. Ross stated: "We will sell through the product with the font you are concerned with and change to another font. We have many fonts with the word Beverly Hills." Mr. Ross proceeded to state his position that his company could not take the merchandise back because taking back merchandise would have economic harm on the businesses. Mr. Ross did not deny the merchandise was infringing, nor did he contest the validity of the Hotel's Mark. Mr. Ross's sole reason for not complying with the cease-and-desist letter was because his business would lose financial profits – where his business is capitalizing on the Hotel's Mark; that is, financial profits Defendant is receiving at the expense of capitalizing on the Hotel's Mark, trademarks that the Hotel constantly has to monitor and protect.

Defendant suggests it was unreasonable for the Hotel to deny Defendant the right to sell off the merchandise, but this position fails to acknowledge the sole purpose of a cease-and-desist letter - to stop trademark infringers from continuing the infringing activity immediately, not when it is financially (or otherwise) convenient for the infringers. Kitross intended/intends to profit and exploit the Hotel's trademark on its merchandise and further dilute the Hotel's Mark.

Kitross does not want to be held accountable for its actions as evidenced by the representation that it would change the font but not until it finished selling off all the merchandise and exploiting off the Hotel's protected Mark and good will. Kitross is attempting to align itself with the Hotel so it can be more marketable and attract

consumers to buy more of overpriced merchandise. Kitross agreed they had "many different fonts" they could use, but purposefully and intentionally used the Hotel's protected stylized lettering so the merchandise would be more marketable and recognizable in the Beverly Hills community and beyond. The Hotel has garnered an extraordinary amount of recognition and influence such that the majority of consumers, whether the general public or iconic celebrities, public figures, or politicians, want to align, affiliate, or associate themselves with the Hotel.

### III.   LEGAL AUTHORITY

Rule 12(b)(6) mandates dismissal when a plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The question presented by a motion to dismiss is not whether plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of [its] claim." *Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1088 (C.D. Cal. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Kythera Biopharmaceuticals, Inc. v Lithera, Inc.* (C.D. Cal. 2014) 998 F.Supp.2d 890, 897 [quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511]). To survive a Rule 12(b)(6) motion, the plaintiff need only allege facts sufficient to "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 663 (2007). When ruling on such a motion, the court must "construe the pleadings in the light most favorable to the nonmoving party" and "accept all factual allegations in the complaint as true." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). In the Ninth Circuit, "there is a strong presumption against dismissing an action for failure to state a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper "only if no cognizable legal theory exists or the plaintiff has alleged insufficient facts to support a cognizable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

/ / /

/ / /

## IV.   LEGAL ARGUMENT

**A.**     <u>**The Court Should Not Dismiss the Complaint at the Pleading Stage**</u>
<u>**Before the Parties Engage in Meaningful Discovery to Prove the**</u>
<u>**Merits of the Case**</u>

The pleading stage is not the time to test the legal merits of this case when little more than the allegations and summary denial of them are before the Court. The Court should deny Defendant's motion to dismiss and allow the Hotel to prove the merits of its case through discovery.   In *Au-Tomotive Gold, Inc. v. Volkswagen of Am. Inc.* (9th Cir. 2006) 457 F.3d 1062 ("*Volkswagen*"), the court considered the parties' cross-motions for summary judgment on the issue of trademark infringement and the district court's determination that Volkswagen and Audi had not offered any evidence showing a likelihood of confusion. (*Id*. at 1075.) The Ninth Circuit reversed the district court's denial of summary judgment in favor of Volkswagen and Audi on the issue of infringement, noting that "because the likelihood of confusion is often a fact-intensive inquiry, courts are generally reluctant to decide this issue at the summary judgment stage." (*Id*. at 1075, 1078.) The *Volkswagen* Court reviewed evidence de novo, including extensive discovery between the parties and ultimately ruled that Volkswagen could establish a prima facie case for infringement, but was required to remand for further consideration of Auto-Gold's defenses against the infringement claim. (*Id.* at 1078).  Here, no discovery has been conducted. There has not been an in-depth analysis of the claims brought forth by the Hotel. Thus, this Court should allow for the parties to engage in discovery and give the Hotel the opportunity to prove its claims.

Distinguishing *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.* (C.D. Cal. 2012) 925 F.Supp.2d 1067, 1074 and other cases cited by Kitross is the fact that the cases concerned motions for summary judgment, rather than a motion to dismiss; thus, the analysis turned on the weight of the evidence, not simply alleged facts. (*Id*., 925 F. Supp. 2d at 1069.) As the Court explained in *Toyo Tire & Rubber Co., Ltd. v. CIA*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Wheel Group* (C.D. Cal. May 6, 2016), 2016 WL 6138416, *2, on a motion to dismiss, the court "accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff." (*Id*. at *2, citing *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008), and *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding leave to amend should be granted even if no request to amend was made). This policy is applied with extreme liberality. *Morongo Band of Mission Indians v. Rose,* 893 F. 2d 1074, 1079 (9th Cir. 1990).The *Toyo Tire* court concluded that at the motion to dismiss stage, Plaintiffs have sufficiently alleged that the OPMT trade dress serves a reputation related purpose and therefore raises a "plausible inference" that the trade dress is not functional in the 'aesthetic sense or the traditional 'utilitarian' sense. (*Toyo Tire at *5)* citing *Iqbal, 556 U.S. at 679.* The Hotel need not prove its entire case simply at the pleading stage. *See Toyo Tire*, at *4 ("Plaintiffs do describe the OPMT trade dress in the FAC as having an "aesthetically aggressive appearance." … However, the Court cannot conclude a description of the tread appearance amounts to "advertising tout[ing] the utilitarian advantages of the design." … Furthermore, at this stage, Plaintiffs need not prove the claimed trade dress is non-functional as Defendant's arguments intimate. See *Lepton Labs, LLC v. Walker,* 55 F. Supp. 3d at 1240 ("A court must test the legal merits of a plaintiff's alleged trade dress at summary judgment or trial when the parties provide with all relevant, admissible evidence—not at the pleading stage when the court has little more than the plaintiff's allegations and the defendant's summary denial of them. So long as plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress, it should be allowed to proceed").)

As the current case law suggests, the Hotel, through extensive discovery and investigation, should be given the opportunity to litigate and prove its claims against Defendant. Its claims should not be dismissed prematurely at the stage of litigation. Thus, the Court should deny Defendant's motion to dismiss.

**B.** **Kitross Purposefully Uses the Hotel's Mark to Associate its Goods/ Products to the Hotel and to Identify the Source of the Goods**

Trademarks function to identify the source or origin of goods or services. A trademark is defined in 15 U.S.C. §1127 to include "any word, name, symbol, or device or any combination thereof" used by any person" to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." (*Two Pesos, Inc., v. Taco Cabana, Inc.,* (1992) 505 U.S. 763, 768.) To establish trademark infringement, a Plaintiff must show that (1) it has a valid and legally protectable mark; (2) it owns the mark, and (3) defendant's use of the mark to identify goods or services causes a likelihood of confusion as to the affiliation, connection, or associations of Defendant with Plaintiff, or as to origin, sponsorship, or approval of Defendant's goods or services by Plaintiff. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198 (3d Cir. 2000)

Here, Defendant does not dispute, nor could it, that Plaintiff has a valid and protectable Mark. Plaintiff, in its Complaint, provided as evidence the Hotel's USPTO trademark registrations demonstrating validity and presumption of protection of the Mark. As a result, Defendant does not dispute the Hotel properly alleged ownership over its protected trademark "The Beverly Hills Hotel" in its stylized lettering and font. However, Defendant does argue, though unpersuasively, that its use of the mark "Beverly Hills" in the Hotel's registered and federally protected lettering solely has aesthetic functionality and is not trademark infringement. Defendant focuses on the name "Beverly Hills" but fails to acknowledge it used the Hotel's protected font/stylized lettering on its products, which is an important factor in the analysis, not solely the name of the Mark.

The last element of the analysis is the crux of this argument. Defendant argues its use of the Hotel's Mark is solely aesthetic and has nothing to do with the reputation, recognizability, or source identification/association to the Hotel. This

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

argument is meritless, and at the very least, warrants robust discovery and proof to be established through litigation, not dismissed at the pleading stage. *Two Pesos, Inc., v. Taco Cabana, Inc.,* (1992) 505 U.S. 763, 768; *A & H Sportswear, Inc. v Victoria's Secret Stores, Inc.,* 237 F.3d 198 (3d Cir. 2000)

In *Vuitton*, the Court analyzed this issue of "aesthetic functionality" as it relates to the luxury fashion house's trademarked design used on its expensive luggage, handbags and other products. *Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 772, 779 (9th Cir. 1981). The Defendant, J. Young Enterprises Inc. ("J. Young"), developed a line of merchandise decorated with a design remarkably similar to that used on Vuitton's merchandise, similar to this case. (*Id*. at 772). J. Young's items were almost identical in design and coloring, as with Kitross's identical "stylized lettering" and use of remarkably similar colors such as the Hotel's iconic pink and green color scheme. Kitross specifically used the Hotel's identical protected "stylized lettering" and iconic color pattern on its products to market its products as sourced or associated with the Hotel.  Kitross incorrectly applies the aesthetic functionality argument, an analysis the *Vuitton* court rejected, stating that just because a product has a feature that may contribute to consumer appeal, does not mean that the specific mark is a functional element of that product. Not every feature that contributes to the sale ability and consumer appeal of a product, as a matter of law, is a functional element of that product. (*Id*. at 773) The Court agreed with *Vuitton* that the term, "functional" as argued by Vuitton can also mean when a feature is a "mere embellishment, a form of dress, for the goods primarily adopted for purposes of identification and individuality it is unrelated to basic consumer demands of the product" and thus imitation may be forbidden. (*Id*., citing *Pagliero v. Wallace China Co.,* 198 F.2d 339, 343 (9th Cir. 1952)

The design at issue in the *Vuitton* case was used to decorate Vuitton's goods and was federally registered with the USPTO in 1979. (*Id*. at 772). We may assume, as was argued in *Vuitton*, from the early registration of the Hotel's Mark and from

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

the Mark itself, which incorporates the distinct stylized lettering/font and name of the Hotel and the fonts unique association to the heritage of the Hotel, that the design was/is intended, at least in part, to indicate the source of the product and sponsorship or association with the products and the Hotel. The *Vuitton* court was not satisfied and did not agree with J. Young's argument that Vuitton's designs as registered, were created to merely satisfy its consumers taste for beauty. (*Id* at 774) In other words, the court disagreed with the J. Young's position, similar to Kitross's position, that consumers purchased Vuitton products *solely* or *primarily* for their aesthetic appeal rather than the "consumers interest afforded to them by carrying a certain bag which overshadows that person's sense for the purely aesthetic." (*Id*.) Vuitton products carry status, prestige, and exude luxury. Consumers want to associate themselves with Vuitton in the same way they want to associate themselves with the Hotel's affiliations - luxury, high-quality, and status. Defendant's argument that consumers purchase Kitross's merchandise solely because of their "civic pride" lacks merit and is not persuasive. Moreover, seeking dismissal based solely on the subjective intent of consumers and their reasons for purchasing a product is premature as the analysis is fact-intensive and complex.

Defendant cites *International Order of Job Daughters v. Lindeburg & Co.* 633 F.2d 912 (9th Cir.1980) in support of the Ninth Circuit recognizing the aesthetic functionality doctrine. Although the Ninth Circuit recognizes this doctrine, courts are split on how to apply this test and have applied the doctrine in narrowly construed cases. In *Lindeburg*, defendant, a young women's fraternal organization ("the Organization"), sued Lindeburg for using the Organization's fraternal emblem. In 1954, Lindeburg began selling jewelry bearing the Organization's emblem – which was not a federally registered trademark. Three years later, Lindeburg asked the Organization to designate Lindeburg as an "official jeweler" of the Organization, but the Organization refused. In 1964, the Organization asked Lindeburg to stop manufacturing and selling the jewelry, but Lindeburg did not comply, and the

Organization brought suit. Ultimately, based on the specific facts of this case, the Court held that Lindeburg's use was not source identifying because the Organization had acquiesced Lindeburg's use and the emblem was used as mere aesthetic purpose instead of identifying who the source of the Organization's emblem was. (*Id*. at 920.)

In contrast, the Hotel registered its name along with the protected stylized lettering and font long before Defendant existed and attempted to infringe on the Mark. (See Williams Dec. ¶ 6). The Hotel's Mark is uniquely associated with the heritage of the Hotel. The Hotel had its name, "The Beverly Hills Hotel," before the city was even named. (Id. at ¶ 4) Unlike in *Lindeburg*, when the Hotel found out about Kitross's infringing conduct it acted immediately and sent a cease-and-desist letter. (See Smith Dec.)  It did not acquiesce Kitross's infringing activity. Plaintiff acknowledges the name "Beverly Hills" can also be used to identify the city of Beverly Hills, but in this context, using the Hotel's protected stylized lettering and overall look, and Kitross's purposeful and strategic move to associate itself with the Hotel, Kitross's use is <u>not</u> aesthetic but *source-identifying*. The owner of Kitross, Fraser Ross, admitted via email to the Hotel's counsel that they could "change to many different fonts." (See Complaint) Mr. Ross and Kitross knew exactly what they were doing when they decided to improperly use the Hotel's protected stylized lettering. Mr. Ross knew or should have known that his Kitross Beverly Hills store is 2 miles away from the Hotel and that marketing his store and products with the Hotel stylized lettering and brand would draw more consumers to his store. Kitross uses the Hotel's protected stylized lettering on its clothing and merchandise and even decorates its store with the Hotel's iconic pink and green color scheme, along with the iconic banana leaf wallpaper/print installed throughout the Hotel's guestroom hallways and the famous Fountain Coffee Room (See Williams Dec. ¶ 16). Additionally, Kitross sells photographs of the Hotel throughout its store. (See Williams Dec. ¶ 15).  These facts show Kitross is not just using the trademark solely for "aesthetic" purposes but, more importantly, to associate itself to the Hotel and

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

exploit the Hotel's goodwill and reputation. Thus, the Court should view Kitross's infringing use as source-identifying.

In contrast to *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.* (C.D. Cal. 2012) 925 F.Supp.2d 1067, 1074, cited by Kitross, the clothing and other products at issue here are source identifying and the aesthetics of the design have become associated with the Beverly Hills Hotel brand. See Complaint, ¶ 5 (noting "The Beverly Hills Hotel owns the trademark 'The Beverly Hills Hotel,' and the distinctive stylized lettering used by the Hotel on its façade, signs, public relations materials, website, and merchandise") and ¶ 8 (noting "Both the words and the stylized text of "The Beverly Hills Hotel" are registered service marks … and have been used in connection with the Hotel for over seven decades. The Mark is instantly recognizable, both nationally and internationally, and its prominence has undoubtedly contributed to the Hotel's historical success. As a result, the Hotel has taken, and is willing to take, great measures to ensure its exclusive use of the Mark and protect this valuable asset.") Both the Hotel's name and the distinctive stylized lettering used under the trademark have acquired secondary meaning such that they have become associated with the Hotel itself. In fact, as mentioned above, the Hotel received an email communication from a patron of the Hotel, Mr. Anderson. (Williams Dec. ¶ 13). Mr. Anderson's email contained a photograph depicting Kitross selling, in its Beverly Hills location, a variety of clothing, products, and accessories with the words "Beverly Hills" written in the Hotel's protected stylized lettering. (Williams Dec. ¶ 14) Mr. Anderson emailed the Hotel immediately and stated, "your logo is all over the place" referring to Kitross's Beverly Hills storefront. (Williams Dec. ¶ 14) Mr. Anderson's email communication is evidence of association, infringement, and consumer confusion the Hotel intends to protect and prevent.

This case is further distinguishable from *A.V.E.L.A* where the Court dealt with various evidentiary issues that are not at play here. Ownership of the trademark for the "Betty Boop" image and words were in question because ownership of "Betty

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Boop" was not clear. The plaintiff in *A.V.E.L.A* did not timely submit their trademark registration to the Court and thus the Court declined to admit any supplemental evidence in its decision. Additionally, moving from procedural to substantive, the district court held that the "fractured" history of multiple entities owning intellectual property rights in works featuring Betty Boop precluded Fleischer from proving secondary meaning the evidence showed multiple entities own the rights to Betty Boop works. (*Id.* at 967) Even with the evidence provided in *A.V.E.L.A*, albeit limited, the circuit court *remanded* to district court for further proceedings on Fleischer's trademark infringement claims regarding the Betty Boop mark. (*Id.* at 968.) Here, the parties have conducted no discovery, and we are only at the initial stages of litigation. If the *A.V.E.L.A* court could not decide on summary judgment with the facts and evidence presented, it is clear this Court should not decide this case on the pleadings and should deny the Defendant's motion to dismiss at this juncture.

Kitross further attempts to analogize the "aesthetic functionality" doctrine to two other cases, *LTTB LLC v. Redbubble Inc.*, 840 F. App'x 148 (9th Cir. 2021) and *Cove USA LLA v. No Bad Days Enterprises, Inc.,* No. 820CV02314JLSKES, 2022 WL 423399 (C.D. Cal. Jan. 5, 2022) cases that are substantially different than the facts at hand – comparing the pun "lettuce turnip the beet" and the phrase "No Bad Days" to the iconic and world recognized Beverly Hills Hotel font/lettering/brand. The phrases "Lettuce Turnip The Beet" and "No Bad Days" do nothing to indicate source, and the two cases, *Redbubble* and *Cove*, do not provide any evidence that their registered mark is used in any way to identify source, rather those facts do lean more to an aesthetic use purpose. No average consumer would be confused or be able to identify the source of the phrase "Lettuce Turnip The Beet" or "No Bad Days." However, the Hotel's specific stylized lettering/font, coupled with the nearly identical word mark of the Hotel, and use of the banana leaf wallpaper in Defendant's store, the Hotel patron's confusion of brand association, plus the confusingly similar Hotel color scheme of pink and green, creates substantially more evidence to prove

Kitross's source identifying use, and not merely "aesthetic" use they allege.

Kitross alleges that because the infringing products contain a "sewn-on JET label", this evidence proves its use is functional. This argument holds no merit. The Hotel is not expected to personally and exclusively manufacture every product its trademarks are associated with. The Hotel uses third party entities to manufacture goods, but the products/goods/services still include the Hotel brand and trademarks to avoid consumer confusion and ensure the quality is maintained.

For all reasons set forth above, the facts of this case are distinguishable from the cases cited by the Defendant, and the controlling law on this subject clearly establish that the Court should deny the Defendant's motion to dismiss as to claim of trademark infringement.

**C.** **The Hotel Has Alleged Sufficient Facts for Claim of Dilution**

**1.** **The Hotel Can Prove Its Mark Is Famous**

The Federal Trademark Dilution Act (TDRA), 15 U.S.C §1125 (c) creates a federal cause of action to protect famous marks from unauthorized use; to *prevent others from trading upon the goodwill and established renown of such* marks; and to prevent dilution of the distinctive quality of such marks. 15 U.S.C §1125 (c). This is exactly what Kitross is doing by infringing the Hotel's stylized lettering on Kitross's products and using the lettering, name, and colors to profit off the Hotel's goodwill and reputation, which is one of two purposes of the Lanham Act. (*Four Seasons Hotels and Resorts B.V v. Consorcio Barr, S.A.*) (citing *Intel Corp v Terabyte Int'l, Inc.*, 6 F.3d, 614, 618-19. (9th Cir. 1993) ("To prevent impairment of the goodwill and reputation of trademark owners.")

A mark qualifies as famous for the purposes of a dilution claim "if it is widely recognized by the general consuming public of the United States as a designation of source for the goods or services of the mark's owner." 15 U.S.C §1125 (c)(2) citing *Stone Brewing Co., LLC v. MillerCoors LLC (full citation)* (district court denying defendants motion for summary judgment for trademark dilution claims even when

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

the court did not, as a matter of law, find that Plaintiff's trademark was sufficiently famous). In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) the duration, extent, and geographic reach of advertising, and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; (iv) whether the mark was registered under the principal register. 15 U.S.C §1125 (c)(2)(A)(i)-(iv). The *Stone Brewing* court concluded that the analysis of whether a mark is famous is highly fact intensive and could not grant summary judgment for defendants even when the trademark was not sufficiently famous.

Here, at the pleading stage, there is simply no legal support for Kitross's request to have all the Hotel's claim dismissed *before* any discovery or investigation takes place. The Hotel has set forth more than enough facts and authority supporting its right to present evidence on and prove the mark is famous under the dilution claim analysis. Kitross is conveniently choosing to ignore the facts plead in the complaint so it can avoid engaging in discovery and thereby preclude the Hotel from proving its claims. (See Complaint, ¶ 5 (noting "The Beverly Hills Hotel owns the trademark 'The Beverly Hills Hotel,' and the distinctive stylized lettering used by the Hotel on its façade, signs, public relations materials, website, and merchandise") and ¶ 8 (noting "Both the words and the stylized text of "The Beverly Hills Hotel" are registered service marks … and have been used in connection with the Hotel for at least *over seven* decades. The Mark is instantly recognizable, both nationally and internationally, and its prominence has undoubtedly contributed to the Hotel's historical success").) The Hotel will prove, through discovery and litigation, that its mark is famous for purposes of the dilution claim; thus, the court should deny Defendant's motion to dismiss this claim.

/ / /

2. **Kitross Ignores the Use of a Nearly Identical Mark, Including Lettering and Font Uses**

In a claim of dilution, trademark protection focuses not on the source signaling function but rather protection from an appropriation of or free riding on the investment the trademark holder has made in its trademark. *Playboy Enters. Inc. v. Welles* (9th Cir. 2002) 279 F.3d 796, 806, n. 41 [elucidating the "identical or nearly identical" standard for dilution); *Trek Bicycle Corp., 305 F.3d at 906*] ["[t]he marks must be of sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior"].) Here, junior mark association with the senior mark is exactly what the Hotel seeks to protect and prevent. Kitross sells a variety of products with the words "Beverly Hills" in the remarkably similar pink and green color scheme, with the *identical* stylized lettering and font used by the Hotel. Kitross is located approximately two miles from the Hotel – both parties in Beverly Hills.  Kitross is purposefully benefitting from the Hotel's goodwill and "free riding on the investment" the Hotel has put into establishing such an iconic, reputable, and world class brand. The Hotel has invested millions into its brand over the 100 years it has been in service. The Court should *not* allow for Kitross to appropriate or free ride off the Hotel's hard work and investment. The Court should deny Kitross's motion to dismiss the Hotel's dilution claim.

D. **The Hotel's Complaint Alleges Facts to Support a Claim for Unfair Competition California's Business & Professions Code § 17200**

Courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition. *Hokto Kinoko Co. v. Concord Farms, Inc., 810 F.Supp.2d 1013, 1031* (C.D.Cal.2011) (citing *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (9th Cir.1979)); see also *Grey v. Campbell Soup Co., 650 F.Supp. 1166, 1173* (C.D.Cal.1986) ("The tests for infringement of a federally registered mark under §32(1), 15 U.S.C. §1114(1), infringement of a common law trademark, unfair competition under §43(a), 15

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

U.S.C. §1125(a), and common law unfair competition involving trademarks are the same").

As Kitross indicates in its motion, the Hotel *has* alleged ownership of its marks, supported by its USPTO registrations. The Hotel *has* alleged commercial use of its mark as identified in its Complaint. Furthermore, the Hotel *has* alleged facts showing Kitross's intent to associate itself with the Hotel and unlawfully capitalize on the Hotel's protected marks, goodwill, and reputation. Kitross has not met the onerous burden of prove why the Hotel's unfair competition claim should be dismissed, much less at the initial pleading stage of the case. Kitross only assumes the Hotel cannot prove any of its claims, and thus also assumes the unfair competition claim fails. If this Court finds that the Hotel's complaint includes sufficient facts to warrant even initial discovery efforts, then as a matter of law, it should deny Kitross's motion to dismiss the unfair competition claim.

## V.    CONCLUSION

For the foregoing reasons, the Hotel respectfully requests this Court **deny** Defendant's motion to dismiss on all claims. Alternatively, if the Court grants the motion as to any of the claims, the Hotel requests its right to amend its Complaint.

DATED:  December 18, 2023          STOKES WAGNER ALC

By: _____

PETER B. MARETZ
OMAR V. HERNANDEZ
Attorneys for Plaintiff SAJAHTERA,
INC. DBA THE BEVERLY HILLS
HOTEL

1

2

## CERTIFICATE OF SERVICE

3      I hereby certify that on December 18, 2023, a true and correct copy of the

4

5 foregoing document was filed electronically with the Clerk of the Court using the

6 Court's CM/ECF electronic filing system, which automatically generates a Notice of

7 Electronic Filing ("NEF") at the time said document is filed to all CM/ECF Users

8

9 and counsel of record who have appeared in this case. Service with this NEF

10 constitutes service pursuant to Federal Rule of Civil Procedure 5(b)(E).

11

12      DATED:  December 18, 2023      STOKES WAGNER ALC

13                                    By: _____

14                                        PETER B. MARETZ
                                          OMAR V. HERNANDEZ
15                                        Attorneys for Plaintiff SAJAHTERA,
                                          INC. DBA THE BEVERLY HILLS
16                                        HOTEL

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**