Jeremy D. Smith (SBN 242430)
jsmith@kranesmith.com
Craig S. Berman (SBN 195718)
cberman@kranesmith.com
**KRANE & SMITH, APC**
16255 Ventura Blvd., Suite 600
Encino, CA 91436
(818) 382-4000 Telephone
(818) 382-4001 Facsimile

Attorneys for Defendant KITROSS
APPAREL LOS ANGELES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION – L.A.

| | |
|---|---|
| SAJAHTERA, INC., a Delaware corporation, dba THE BEVERLY HILLS HOTEL, | CASE NO. 2:23-cv-08005 |
| Plaintiff, | [Assigned to Hon. Michael W. Fitzgerald, Courtroom 5A] |
| v. | **OPPOSITION TO PLAINTIFF / COUNTER-DEFENDANT'S MOTION TO DISMISS AND STRIKE PORTIONS OF COUNTERCLAIM** |
| KITROSS APPAREL LOS ANGELES, LLC, a California limited liability company; and DOES 1 through 50, | |
| Defendants. | Date:      March 18, 2024<br>Time:     10:00 a.m.<br>Judge:    Michael W. Fitzgerald<br>Court:    5A |

# **TABLE OF CONTENTS**

*Page*

I.   INTRODUCTION ............................................................................. 1

II.   FACTUAL BACKGROUND ........................................................... 2

    A.   The California Couts Find "Beverly Hills Hotel" Geographically Descriptive ......................................... 3

    B.   Television and Movies Make the City of Beverly Hills a Household Name Associated with Wealth, Luxury, and Celebrities ........................................................................ 4

    C.   BH Hotel Finally Registers its Trademarks ....................... 5

    D.   Third Parties Continue to Use Williams' Stylized Lettering with "Beverly Hills" with No Complaints by BH Hotel ......... 6

    E.   BH Hotel's and the Dorchester Collections' Brunei Owners Tarnish its Reputation and Trademarks by Codifying and Enforcing Sharia Law Against Brunei's Citizens, Sparking Protests, and a Boycott of BH Hotel ..................... 7

    F.   BH Hotel Discover Kitross' Use and Litigation Ensues ....... 8

III.   LEGAL STANDARD ..................................................................... 8

IV.   ARGUMENT ................................................................................. 9

    A.   Kitross' Counterclaims for Declaratory Judgment are not Mere Mirror Images of BH Hotel's Claims of Infringement and Dilution Because they are Largely Based on Different Allegations and Theories ............................................ 9

    B.   Kitross has Stated a Claim for Cancellation of BH Hotel's Trademarks for Genericness ....................................... 12

    C.   Kitross has Stated a Claim for Tortious Interference ........ 15

    D.   The Allegations BH Hotel Seeks to Strike are Relevant to Issues Raised by its Own Complaint and by Kitross' Counterclaim ................................................ 17

*Page*

1.  Motions to strike are disfavored and should be denied
    if the allegations at issue might be relevant to issues
    in action                                                                17

2.  Allegations about third parties' use of the name
    "Beverly Hills" are relevant to likelihood of
    confusion and dissolution, as well as numerous
    defenses                                                                 18

3.  Allegations about BH Hotel's owner's Tarnishment
    of BH Hotel's reputation and brand are relevant to
    dilution                                                                 21

E.  The Coury May Deny BH Hotel's Motion for Beverly Hills
    Violations of Local Rule 7-3                                            23

V.  CONCLUSION                                                              24

# TABLE OF AUTHORITIES

### *CASES*                                                          *Page(s)*

*Adidas Am., Inc. v. Skechers, Inc.,* 890 F. 3d 747, 747, 758 (9th Cir. 2018) — 19, 21

*AirWair Int'l. Ltd. v. Schultz,* 84 F.Supp.3d 943 (N.D. Cal. 2015) — 8-9

*Aldens, Inc. v. Packel,* 524 F.2d 38, 51-52, 53 (3d. Cir. 1975) — 10

*Aliign Activation Wear, LLC v. Lululemon Athletica Canada, Inc.,* No. 2:20-cv-03339-SVW-JEM, 2021 U.S. Dist. LEXIS 139350, at *13-14 (C.D. Cal. June 7, 2021) — 19

*AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979) — 18-19

*Angus v. Transnational Auto. Grp., Inc.,* No. CV0900143, 2010 WL 11507997, at *13 (C.D. Cal. Sept. 20, 2010) — 16

*Anti-Monopoly, Inc. v. General Mills Fun Grp.,* 611 F.2d 296, 302 (9th Cir. 1979) — 14

*Arcona, Inc. v. Farmacy Beauty, LLC,* 976 F. 3d 1074, 1081 (9th Cir. 2020) — 19

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) — 9

*Atlantic Recording Corp. v. Serrano,* No. 07-CV-1824 TW (JMA), 2007 U.S. Dist. LEXIS 95203, at *11 (S.D. Cal. Dec. 28, 2007) — 9-10

*Au-Tomotive Gold, Inc. v. Volkswagen of Am. Inc.,* 457 F.3d 1062, 1067 (9th Cir. 2006) — 20

*Avery Dennison Corp. v. Acco Brands, Inc.,* No. 99-cv-1877 DT, 2000 WL 986995 (C.D. Cal. Feb. 22, 2000) — 10

*Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007) — 9

*BLK Brands, LLC v. Five Tran Inv. Grp.,* LLC, No. SACV 20-01932-CJC (JDEx), 2021 U.S. Dist. 139599, at *5, (C.D. Cal. Apr. 7, 2021) — 13

*California Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 217 F.Supp.2d 1028, 1033 (C.D. Cal. 2002) — 18

*Calsoft Labs. v. Panchumarthi,* No. 19-cv-04398-NC, 2020 U.S. Dist. LEXIS 127493, * 9 (N.D. Cal. June 8, 2020) — 12

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 393 (1995) — 15

*Denver Urban Homesteading, LLC v. Dervaes Inst.,* 2015 U.S. Dist. LEXIS 176475, at *11 (C.D. Cal. November 5, 2015) — 13

| ***CASES cont'd*** | ***Page(s)*** |
|---|---|
| *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) | 15 |
| Diamond Fruit Growers, Inc. v. Krack Corp., 794 F. 2d 1440, 1443 (9th Cir. 1986) | 9 |
| *Ebner v. Fresh, Inc.,* 838 F.3d 958, 963 (9th Cir. 2016) | 9 |
| *Edwards v. Arthur Anderson,* 44 Cal.4th 937, 944 (2008) | 16 |
| *Elliott v. Google, Inc.,* 860 F.3d 1151, 1157 (9th Cir. 2017) | 14 |
| *Englewood Lending Inc. v. G & G Coachella Invest. LLC,* 651 F. Supp. 2d, 1141, 1145 (C.D. Cal. 2009) | 12 |
| *Entrepreneur Media, Inc. v. Dermer,* No. SACV-181562-JVS (ESx), 2019 WL 4187466, at *7 (C.D. Cal. July 22) | 14 |
| *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) | 9 |
| *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) | 18 |
| *Federal Sav. and Loan v. Gemini Mgmt.,* 921 F.2d 241, 243 (9th Cir. 1990) | 18 |
| *Filipino Yellow Pages, Inc. v. Asian Journal Pubs., Inc.,* 198 F.3d 1143, 1151 (9th Cir. 1999) | 15 |
| *Friedman v. 24 Hour Fitness USA, Inc.,* 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) | 17 |
| *Gibson Brands, Inc. v. John Hornby Skewes & Co.,* No. CV 14-000609 DPP (SSx), 2014 U.S. Dist. LEXIS 150734, at *18-20 (C.D. Cal. October 23, 2014) | 13 |
| *Hoeft v. Tucson Unified School Dist.,* 967 F.2d 1298, 1301 (9th Cir. 1992) | 18 |
| *International Order of Job's Daughters v. Lindeburg and Co.,* 633 F.2d 912 (9th Cir. 1980) | 20 |
| *Interscope Records v. Duty,* N0. 05-3744, 2006 WL 988086, at *12, 2006 U.S. Dist. LEXIS 20214, at *10-11 (D. Ariz. April 14, 2006) | 10 |
| *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 634 (9th Cir. 2008) | 19, 21 |
| *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) | 19 |
| *KP Permanent Make-Up v. Lasting Impression I, Inc.,* 408 F.3d 596, 605 (9th Cir. 2005) | 12-13 |

**OPPOSITION TO MOTION TO DISMISS AND STRIKE PORTIONS OF COUNTERCLAIM**

| **_CASES cont'd_** | **_Page(s)_** |
|---|---|
| *KTS Karaoke, Inc. v. Sony ATV Music Pub. LLC.,* No. CV-12-00014MWF (JEMx), 2012 U.S. Dist. LEXIS 196945, at *2 (C.D. Cal. September 17, 2012) | 10 |
| *Lodestar Anstalt v. Bacardi & Co.,* 31 F.4th 1228, 1259, n. 11 (9th Cir. 2022) | 19 |
| *Mammoth Hardware v. Ace Hardware,* No. Civ. S-05-2486 LKK/JFM, 2006 WL 279307 at *11-14 (E.D. Cal. Feb. 6, 2006) | 16 |
| *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1145 (9th Cir. 2011) | 18 |
| *New York Stock Exch., Inc. v. New York, New York Hotel,* 69 F. Supp.2d 479, 489 (S.D.N.Y. 2001) | 19-20 |
| *Parks School of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) | 9 |
| *PMC, Inc. v. Saban Entertainment, Inc.,* 45 Cal.App.4th 579, 602-603 (1996) | 16 |
| *RDF Media Ltd. v. Fox Broad. Co.,* 372 F.Supp.2d 556, 561 (C.D. Cal. 2005) | 18 |
| *Rosales v. Citibank,* 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001) | 17 |
| *Rudolph Intl. v. Realys, Inc.,* 482 F. 3d 1195, 1198 (9th Cir. 2007) | 12 |
| *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,* 680 F.Supp. 2d 1107, 1118-19 (N.D. Cal. 2010) | 11, 20 |
| *Scat Enters. v. FCA U.S. LLC,* No. CV-14-7995R, 2017 U.S. Dist. LEXIS 207149, *11-12 (C.D. Cal. June 8, 2017) | 19 |
| *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) | 9 |
| *Stevenson Real Estate Services v. CB Richard Ellis Real Estate Services,* et al., 138 Cal.App.4th 1215, 1223 (2006) | 16 |
| *Stickrath v. Globalstar, Inc.,* No. 07-cv-1941-THE, 2008 U.S. Dist. LEXIS 95127, 2008 WL 2050990, at *3 N.D. Cal. May 13, 2008) | 10-11 |
| *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 840 (9th Cir. 2001) | 12 |
| *Singer v. Live Nation Worldwide, Inc.,* No. SACV 11-0427 DOC (M:Gx), 2012 U.S. Dist. LEXIS 5196, 2012 WL 123146, *2 (C.D. Cal. Jan. 13, 2012) | 24 |

***CASES cont'd***                                                           ***Page(s)***

*Thimes Sols., Inc. v. TP Link USA Corp.,* No. 2:19-cv-10374, 2022 U.S.            22
    Dis. LEXIS 128081, at *3 (C.D. Cal. July 11, 2022)

*Virgin Enters. v. American Longevity,* 2001 U.S. Dist. LEXIS 2315, *3-4,          22
    2001 WL 237379, (S.D.N.Y. March 6, 2001)

*Visa Intern. Service Ass'n v. JSL Corp.,* 610 F.3d 1088, 1089-1090 (9th           11
    Cir. 2010)

*Weintraub v. Sotheby's Int'l Realty, Inc.,* No. 2:18-cv-6922-AB (KSx),            20
    2018 U.S. Dist. LEXIS 223905, *8 (C.D. Cal. Nov. 1, 2018)


***STATUTES***                                                               ***Page(s)***

15 U.S.C. § 1063(4)                                                               14

15 U.S.C. § 1125(c)(1)                                                         19, 21

Fed. R. Civ. P. 401                                                               21

Local Rules, rule 7-3                                                        1, 23, 24

Local Rules, rule 12(b)(6)                                                       8, 9

Local Rules, rule 12(f)                                                         1, 24


***OTHER AUTHORITIES***                                                      ***Page(s)***

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and                 17-18
Procedure § 1381 (3d ed. Apr. 2022)

## I.   <u>INTRODUCTION</u>

Plaintiff/Cross-Defendant SAJAHTERA, INC. dba THE BEVERLY HILLS HOTEL ("BH Hotel") begins its brief asking the Court to dismiss Defendant/Cross-Complainant KITROSS APPAREL LOS ANGELES, LLC'S ("Kitross") counterclaims with the extraordinary premise that the Court disposed of Kitross' defenses when it denied Kitross' motion to dismiss BH Hotel's Complaint. However, a motion to dismiss tests whether a plaintiff's complaint states plausible claims for relief, not whether defenses raised in the motion to dismiss potentially have merit. If BH Hotel had complied with the requirement to meet and confer with Kitross' counsel at least seven days before filing, perhaps this motion could have been avoided. Instead, it purported to satisfy L.R. 7-3 by sending an insulting letter that only disclosed one of the arguments in the motion it filed three day days later and misleadingly implied that the motion would include numerous different arguments not found in the moving papers.

In its actual moving papers, BH Hotel first invokes an imaginary rule forbidding redundant counterclaims to ask the Court to dismiss Kitross' declaratory judgment counterclaims. While the Court has discretion as to whether to exercise jurisdiction over any declaratory judgment counterclaim, there are good reasons to do so here. Kitross' counterclaims, which largely rely on different factual allegations from those in BH Hotel's complaint, allegations which tell Kitross' side of the dispute and support its defenses and all four of its claims for declaratory and other relief.

Asking the Court to dismiss Kitross' claim for cancellation of the trademarks for genericness, BH Hotel copies paragraphs about genericide almost verbatim from a Ninth Circuit opinion, but then argues the claim for cancellation should be dismissed because it does not identify the specific services for which the trademarks are generic. But BH Hotel's trademarks only registered for three closely related services, so there is no ambiguity.

/ / /

Motions to strike under Rule 12(f) are disfavored, but BH Hotel nevertheless asks the Court to strike pages of Kitross' allegations, despite asking the Court to do the *opposite* when *it* opposed Kitross' Motion to Dismiss.  The targets include (1) allegations of third party uses of "Beverly Hills" and (2) allegations about BH Hotel's owner's tarnishment of its own already weak trademarks through human rights violations in Brunei that have sparked protests and a boycott against the BH Hotel in the United States.  Allegations should only be stricken if they have no possible relation to the controversy and may prejudice the other party.  Here, third party uses are relevant to the strength of the marks, a likelihood-of-confusion factor and to dilution.  Allegations about the tarnishment of the trademarks by the Sultan of Brunei's harsh and discriminatory criminal laws and the resulting protests of the BH Hotel and bad press are directly relevant to dilution.  The self-tarnishment defense is uncommon but not unprecedented, particularly in light of BH Hotel's repeated references to its "iconic" brand.  Further, it is based on the statutory requirement that an owner seeking remedies for dilution prove likelihood of dilution of a famous and distinctive mark.  Just as the Court treated BH Hotel's allegations as true for the purpose of deciding Kitross' motion to dismiss the complaint, Kitross' allegations should be treated as true and reasonable inferences from them drawn in its favor to resolve this motion—by denying it.

## II.    FACTUAL BACKGROUND

Kitross operates three brick-and-mortar storefronts, including one at 420 North Beverly Drive, Beverly Hills, California.  Kitross is an upscale retailer that provides high quality, on-trend merchandise at attractive prices in clean, spacious, and guest-friendly stores and online at www.kitsonlosangeles.com. (Dkt. 24, ¶ 6.)  BH Hotel is a luxury hotel.  It was built and commenced operations in 1912.  When BH Hotel opened, the city of Beverly Hills had not been incorporated, but the hotel was located in a subdivision of the county of Los Angeles already known as Beverly Hills.  The city of Beverly Hills was incorporated in 2014. (*Id*. at ¶ 7.)  In the 1940s, BH Hotel

was renovated, and the "Crescent Wing" was added, with a modernist façade that faces Sunset Boulevard.  Completed in 1949, the Crescent Wing's façade displayed and still displays the name "The Beverly Hills" in stylized lettering designed by the architect, Paul Revere Williams.  (*Id*. at ¶ 8.)

Almost immediately, other entities located in Beverly Hills began using Williams' stylized lettering together with the name "Beverly Hills," having no reason to believe that BH Hotel claimed any exclusive right to use the stylized lettering in combination with the proper name of the city of Beverly Hills.  (*Id*. at ¶ 9.)  For example, the Beverly Hills Oasis apartment building at 9500 West Olympic Boulevard, built in 1948, displays its name on its own façade in Williams' stylized lettering.  (*Id*. at ¶ 10.)

In 1959, the Beverly Hills Bodega café opened on Robertson Boulevard in Beverly Hills.  This establishment sells sandwiches, Mexican food, and liquor.  Its logo includes the words "Beverly Hills" in the Williams-designed lettering, and it appears on the café's window, menu, signage, bags, and merchandise.  (*Id*. at ¶ 11.)

## A.    The California Courts Find "Beverly Hills Hotel" Geographically Descriptive.

Around 1954, BH Hotel sued Hilton Hotels Corporation in the Superior Court of Los Angeles County for infringement of a trade name and unfair competition, and sought an injunction against Hilton calling its hotel, then under construction, "The Beverly Hilton Hotel."  (*Id*. at ¶ 12.)  BH Hotel lost this case.  At the conclusion of a bench trial, the Hon. Allen T. Lynch issued a number of findings.  The superior court found, among other things, that the words "Beverly Hills" had been, since 1907, and still were, geographical.  It found that the word 'Hotel' had been, since prior to the year 1912, and still was, descriptive of a certain type of business.  It therefore found that the words "Beverly Hills Hotel' had been, since the year 1912, and still were, geographical and descriptive of the business conducted by the plaintiff and its predecessors."  (*Id*. at ¶ 13.)  The superior court further found that the use of the name

"Beverly Hills Hotel" by BH Hotel since 1912 had not resulted in the name acquiring any secondary meaning or special significance in the mind of the public generally or the hotel-going public in particular and the words "Beverly Hills Hotel" had not acquired any meaning different from their original lexicographical meaning as a geographical and descriptive term.  (*Id*. at ¶ 14.)

The superior court also found that there was no confusing similarity either in visual appearance or in sound between the name "Beverly Hills Hotel" and the name "the Beverly Hilton" and the use of "The Beverly Hilton" by defendants had not and would not result in a likelihood of confusion in the mind of the general public or the hotel-going public.  The injunction was denied.  (*Id*. at ¶ 15.)  BH Hotel appealed, and the Court of Appeal of California, Second Appellate District, Division One, affirmed the decision of the Superior Court of Los Angeles County, issuing its opinion on July 13, 1955.  ((*Id*. at ¶ 16.)

**B.      Television and Movies Make the City of Beverly Hills a Household Name Associated with Wealth, Luxury, and Celebrities.**

The Beverly Hillbillies is a sitcom broadcast on CBS from 1962 through 1971.  Its premise was that a poor mountaineer strikes oil on his farm in Missouri and instantly becomes very wealthy.  His newfound wealth prompts him to pack up and move his family into a mansion in Beverly Hills, known for its swimming pools and movie stars.  The show was among the top 20 most-watched shows for eight seasons, cementing the public's association of the city of Beverly Hills with wealth, luxury and celebrities. (*Id*. at ¶ 17.)

Beverly Hills Cop is a film franchise including three American action comedy films set largely in Beverly Hills.  Beverly Hills Cop was released in 1984.  It catapulted actor and comedian Eddie Murphy to international stardom and was the highest grossing film released in the United States in 1984.  It was also nominated for a Golden Globes award and an Academy Award for best screenplay.  Beverly Hills Cop II and Beverly Hills Cop III were later released.  As a result, millions of people

who have never heard of the Beverly Hills Hotel are aware of Beverly Hills as a city. (*Id*. at ¶ 18.)

In 1989, Columbia Pictures released Troop Beverly Hills, a comedy movie starring Shelley Long as a separated socialite who becomes the den mother to a troop of Wilderness Girls scouts.  Many Beverly Hills landmarks, including BH Hotel, appear in the film, and several celebrities made cameo appearances.  While less profitable than Beverly Hills Cop, the film educated a different audience about the city of Beverly Hills and its association with celebrities, the extremely wealthy, and their luxurious lifestyles.  (*Id*. at ¶ 19.)

Beverly Hills 90210 is a teen drama television series that ran on Fox from 1990-2000.  It follows the lives of a group of friends from high school through college and into young adulthood.  Down-to-earth twins move with their parents from Minnesota to Beverly Hills, where they are drawn into the lives of their privileged classmates. The series became a global pop culture phenomenon in the early nineties, with millions watching each episode.  After the series ended, episodes continued to run in syndication for many years.  As a result, millions of people who have never heard of the Beverly Hills Hotel are familiar with the city of Beverly Hills as an upscale destination populated and frequented by the rich and famous.  (*Id*. at ¶ 20.)  Through these films and television shows, and others, the public has an impression of the city of Beverly Hills separate and apart from its impression, if any, of BH Hotel.  These facts show that "Beverly Hills" continues to be geographically descriptive, as California's courts found in the 1950s, and even more so.  (*Id*. at ¶ 21.)

## C.     BH Hotel Finally Registers its Trademarks.

In the late eighties, BH Hotel finally applied with the U.S. Patent and Trademark Office ("USPTO") to register various trademarks, including "The Beverly Hills Hotel" in plain text and "The Beverly Hills Hotel" in Williams' stylized lettering.  The USPTO granted registrations for these two marks, now asserted against Kitross, for the goods and services "Hotel, Restaurant and Catering Services."  On

information and belief, the USPTO was unaware, when it granted the registrations, of the California courts' decisions that "Beverly Hills Hotel" is geographically descriptive. The USPTO was also unaware of any of the third party uses of "Beverly Hills" combined with Williams' stylized lettering. (*Id*. at ¶ 22.)

**D.  Third Parties Continue to Use Williams' Stylized Lettering with "Beverly Hills" with No Complaints by BH Hotel.**

After BH Hotel obtained its federal registrations, third parties continued to combine "Beverly Hills" with Williams' stylized handwriting, in their trademarks and for ornamental and functional purposes. (*Id*. at ¶ 23.) The following are some examples.

Ingrid Wittman, an internationally known couture clothing designer located in Beverly Hills, sells a line of apparel, the "Beverly Hills collection" including baseball caps, sweatshirts and other apparel displaying the words "Beverly Hills" in Williams' stylized lettering as used on BH Hotel's Crescent Wing façade. Her products are sold in her retail store and from a kiosk in "The Grove," a shopping, dining, and lifestyle destination in an open air environment in Los Angeles near Pan Pacific Park. The Beverly Hills themed apparel is sold next to similar merchandise displaying the city name "Bel Air." The Grove is one of the busiest retail locations in the world. (*Id*. at ¶ 24.)

Dr. Ash Khodabaksch, a board certified chiropractor in Beverly Hills, uses a graphic showing the words "Beverly Hills Chiro" in Williams' stylized lettering on his website at https://www.thechiroguy.com/about/. (*Id*. at ¶ 25.)

A Beverly Hills boutique law firm, Beverly Hills Attorney Group, uses Williams' stylized lettering on its website at beverlyhillsattorneys.com. (*Id*. at ¶ 26.) On October 27, 2023, the Beverly Hills Courier ran an advertisement for an event called "Beverly Hills Doggy Daze 90210" that uses the Williams' stylized lettering with the Beverly Hills name. (*Id*. at ¶ 27.)

/ / /

In 2023, the Beverly Hills Historical Society produced a documentary called "The Stars Who Saved Beverly Hills." On the title screen, "Beverly Hills" is shown in a stylized lettering almost identical to Williams' stylized lettering. (*Id.* at ¶ 28.) In 2019, sculptor "Mr. Brainwash" created a sculpture consisting of the words "Beverly Hills is Beautiful" in large pink stylized lettering almost identical to Williams' stylized lettering. The sculpture is displayed in Beverly Canon Gardens in the Golden Triangle in Beverly Hills, where it has become a cultural landmark and a popular subject for photographs. (*Id.* at ¶ 29.)

On information and belief, the BH Hotel has never complained about any of these uses of "Beverly Hills" combined with a font similar to Williams' stylized lettering. (*Id.* at ¶¶ 10, 11, 24-29.)

**E.    BH Hotel's and the Dorchester Collection's Brunei Owners Tarnish its Reputation and Trademarks by Codifying and Enforcing Sharia Law Against Brunei's Citizens, Sparking Protests and a Boycott of BH Hotel.**

The Dorchester Collection, of which BH Hotel is part, is owned by the Brunei Investment Agency, and arm of the government of Brunei, a monarchy ruled by its Sultan. (*Id.* at ¶ 30.) In 2014, Brunei started incorporating Islamic Sharia law into its legal system, including codifying the persecution of gay people. (*Id.* at ¶ 31.) In response, gay rights advocacy groups, travel influencers, and celebrities encouraged the public to boycott BH Hotel. Many bookings were cancelled, and the Beverly Hills City Council passed a resolution urging the Sultan to sell the BH Hotel. Adweek published a story stating: "the bad press and protests have tarnished the glamourous image of the Beverly Hills Hotel, one of the most famous hotels in the world, and that "such extreme brand damage will be difficult to repair." (*Id.* at ¶ 32.)

In 2019, however, Brunei implemented strict Sharia criminal laws, allowing punishments such as stoning to death for having gay sex. This decision increased support for the continuing boycott of BH Hotel. Actor George Clooney was quoted

in the Los Angeles Times, saying "every single time we stay at or take meetings at or dine at any of [Brunei's] hotels, we are putting money directly into the pockets of men who choose to stone and whip to death their own citizens for being gay or accused of adultery." (*Id*. at ¶ 33.)

**F.    The BH Hotel Discovers Kitross' Use, and Litigation Ensues.**

On August 11, 2023, BH Hotel discovered that Kitross was selling, in its Beverly Hills location, a variety of clothing, products, and accessories with the words "Beverly Hills" in William's stylized lettering as displayed on the BH Hotel's facade. (*Id*. at ¶ 34.)  The phrase "Beverly Hills" is an ornamental feature of the products, not an identifier of their source.  One product is a pillow with a needlepoint cover, declaring, "I'd rather be in Beverly Hills," against a pink background with large green banana leaves.  None of the products has both words on the same line like the registered trademarks do and none uses the whole phrase "The Beverly Hills Hotel." (*Id*. at ¶ 35.)

BH Hotel sent Kitross a letter alleging trademark infringement, trademark dilution, and violating California's unfair competition law, and demanding that Kitson immediately cease and desist selling the Beverly Hills themed products.  The same day, BH Hotel sent a similar letter to JET Corp.– John Eshaya, including the same allegations of infringement, dilution, and unfair competition as in the letter to Kitson and demanded that JET cease and desist.  (*Id*. at ¶ 36.)  Fraser Ross, the owner of Kitross, sent an email to BH Hotel's counsel responding to the cease and desist letter. Without admitting infringement or unfair competition, Mr. Ross explained, "Our flagship location is in Beverly Hills and we promote the City of Beverly Hills due to our location."  (*Id*. at ¶ 37.)  BH Hotel sued Kitross for federal trademark infringement, dilution and unfair competition on September 25, 2023.  (*Id*. at ¶ 38.)

## III.   LEGAL STANDARD

A motion to dismiss counterclaims under Rule 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint. *AirWair Int'l. Ltd. v.*

**OPPOSITION TO MOTION TO DISMISS AND STRIKE PORTIONS OF COUNTERCLAIM**

1  *Schultz*, 84 F.Supp.3d 943, 949 (N.D. Cal. 2015).  A motion to dismiss under Rule
2  12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Parks*
3  *School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A court must
4  accept all factual allegations in the pleading as true.  *Erickson v. Pardus*, 551 U.S. 89,
5  94 (2007).  A court may dismiss a claim where "there is no cognizable legal theory"
6  or absence of sufficient factual matter to state a facially plausible claim for relief."
7  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)
8  (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).  "To survive a motion to
9  dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for
10  relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
11  (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether
12  a complaint states a plausible claim for relief is 'a context-specific task that requires
13  the reviewing court to draw on its judicial experience and common sense.'" *Ebner v.*
14  *Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

15  **IV.   ARGUMENT**

16          **A.   Kitross' Counterclaims for Declaratory Judgment are not Mere**
17                 **Mirror Images of BH Hotel's Claims of Infringement and Dilution**
18                 **Because they are Largely Based on Different Allegations and**
19                 **Theories.**

20          BH Hotel represents that under a "mirror image rule" a defendant is not
21  permitted to assert a counterclaim for declaratory judgment that restates issues already
22  before the court as part of the plaintiff's affirmative case.  (Mot. at 2:24-27.)  There
23  is no such rule.[1]  The copyright case cited simply states that courts "often dismiss
24  "mirror image" counterclaims where they merely restate issues already before the
25  court as part of a plaintiff's affirmative case."  *Atlantic Recording Corp. v. Serrano*,

26  _____

27  [1] There is a rule called the "mirror image rule" but it has to do with contract formation, not
28  counterclaims for declaratory judgment.  *See, e.g., Diamond Fruit Growers, Inc. v. Krack*
*Corp.*, 794 F. 2d 1440, 1443 (9th Cir. 1986).

No. 07-CV-1824 TW (JMA), 2007 U.S. Dist. LEXIS 95203, at *11 (S.D. Cal. Dec. 28, 2007) (granting record companies' motion to dismiss individual's declaratory judgment counterclaim as redundant and unnecessary where defendant did not counter moving parties' argument) (citing *Avery Dennison Corp. v. Acco Brands, Inc.*, No. 99-cv-1877 DT, 2000 WL 986995 (C.D. Cal. Feb. 22, 2000) and *Interscope Records v. Duty*, N0. 05-3744, 2006 WL 988086, at *12, 2006 U.S. Dist. LEXIS 20214, at *10-11 (D. Ariz. April 14, 2006).  BH Hotel also relies on *Avery Dennison*. In *Avery Dennison*, however, the district court dismissed the defendant's declaratory judgment claim *as moot* at the summary judgment stage, not at the pleading stage. *Avery*, No. 99-1877DT, 2000 WL 986995, at *4, 2000 U.S. Dist. LEXIS 3938, at *13 (C.D. Cal. Feb. 22, 2000).  And the declaratory judgment claim was moot because the court had already granted summary judgment for the defendant on Avery Dennison's claims for trademark infringement and dilution.  Id.  The *Avery Dennison* court cited a Third Circuit case affirming the dismissal of a declaratory judgment counterclaim, but in that case the counterclaim also became moot when the district court granted summary judgment in the defendant/counterclaimant's favor, and there was complete identity between the factual and legal issues in the complaint and the counterclaim. *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52, 53 (3d. Cir. 1975).  Neither *Avery Dennison* nor *Aldens* supports dismissing even a mirror-image counterclaim at the pleading stage.  Indeed, the Court observed that "a declaratory action is generally the mirror image of an action for copyright infringement."  *KTS Karaoke, Inc. v. Sony ATV Music Pub. LLC.*, No. CV-12-00014MWF (JEMx), 2012 U.S. Dist. LEXIS 196945, at *2 (C.D. Cal. September 17, 2012) (denying motion to dismiss declaratory judgment action for failure to identify the relevant copyrights when they were very likely the same copyrights for which the defendant was suing the plaintiff). Dismissing declaratory judgment counterclaims is not always appropriate just because they arise from the transaction as the complaint and concern the same subject matter.  *Stickrath v. Globalstar, Inc.*, No. 07-cv-1941-THE, 2008 U.S. Dist. LEXIS

95127, 2008 WL 2050990, at *3 N.D. Cal. May 13, 2008).  Instead, courts should focus on whether the counterclaims serve any useful purpose and only dismiss counterclaims when it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim.  *Id.*

Here, Kitross' declaratory judgment claims ask for judgments that Kitross has not infringed or diluted the asserted trademarks—the opposite of rulings sought in the Complaint—but they rely on very different fact allegations that go to the strength, scope, and validity of the trademarks.  In this way, they serve the purpose of providing BH Hotel with notice of details of some of Kitross' defenses and the evidence for those defenses.  The general allegations in the Counterclaim discuss facts relevant to multiple factors relevant to likelihood of confusion, the central issue in trademark infringement disputes.   These include allegations that BH Hotel did not claim trademark rights to "Beverly Hills" in Williams' stylized lettering until almost thirty years after the name and lettering were prominently placed on the Crescent Wing's façade.  In those almost thirty years, multiple third parties using "Beverly Hills" in their business names or to refer to the city of Beverly Hills copied Williams' stylized lettering.  In this way, the Williams-designed lettering became associated with the city name.  These facts go to the strength (or weakness) of the later-registered trademarks.  They are also relevant to dilution.  "A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark."  *Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-1090 (9th Cir. 2010).  Allegations that California's courts have already found "Beverly Hills" geographically descriptive are also relevant to show that "the Beverly Hills Hotel" is a weak mark.  *See Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,* 680 F.Supp. 2d 1107, 1118-19 (N.D. Cal. 2010) ("Sand Hill Advisors is primarily geographically descriptive and therefore a weak mark, especially where other companies used "Sand Hill" in their business names).  They

are also relevant to dilution because only "distinctive" marks are protected from dilution, and descriptive marks do not become distinctive unless they have acquired secondary meaning. *Rudolph Intl. v. Realys, Inc.*, 482 F. 3d 1195, 1198 (9th Cir. 2007).

In a trade secret case, a district court denied a motion to dismiss purported mirror-image counterclaims, recognizing that the plaintiff's trade secret claims might reach final judgment without ever resolving whether the trade secrets were protectible, while the declaratory judgment claim would allow the court to determine all the parties' obligations. *Calsoft Labs. v. Panchumarthi*, No. 19-cv-04398-NC, 2020 U.S. Dist. LEXIS 127493, * 9 (N.D. Cal. June 8, 2020). Further, dismissing the counterclaim at the pleading stage might prove premature. *Id.* Here, similarly, if the counterclaim does not add any legal issues to the case, it will not broaden the scope of discovery, or make more work for the Court, and dismissal might prove premature after the factual records has been developed.

BH Hotel is correct that a district court in this district has dismissed counterclaims for declaratory judgment where the issues raised were already before the court in the plaintiff's claims. *Englewood Lending Inc. v. G & G Coachella Invest. LLC*, 651 F. Supp. 2d, 1141, 1145 (C.D. Cal. 2009). But in that case, the court simply exercised its discretion under the Declaratory Judgment Act to decline to hear claims it deemed superfluous. It did not cite or suggest any rule that would require declaratory judgment counterclaims to be dismissed when they raise issues already in the operative complaint. Indeed, such a rule would interfere with the Court's discretion to hear or decline to hear a given declaratory judgment claim. The motion to dismiss the infringement and dilution counterclaims should be denied.

## B. Kitross has Stated a Claim for Cancellation of BH Hotel's Trademarks for Genericness.

Whether a mark is generic is a question of fact. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 840 (9th Cir. 2001); *see also KP*

*Permanent Make-Up v. Lasting Impression I, Inc.*, 408 F.3d 596, 605 (9th Cir. 2005) (treating the question of whether term was generic as "an intensely factual issue"); *Denver Urban Homesteading, LLC v. Dervaes Inst.*, 2015 U.S. Dist. LEXIS 176475, at *11 (C.D. Cal. November 5, 2015). Here, Kitross has alleged that BH Hotel's "trademarks have become generic and do not function as a service mark because they fail to uniquely identify BH Hotel as the source of services." (Dkt. 24, ¶ 58.) The counterclaim also incorporates by reference the general allegations, which include the allegations that since 1959, third parties have used the words "Beverly Hills" in the William's designed stylized lettering or very similar lettering, for their businesses or art works located in Beverly Hills, all without complaints from BH Hotel. (*Id.* at ¶ 58; see also ¶¶ 10, 11, 24-29.) These allegations support a reasonable inference that the general public has come to associate the stylized lettering with the name of the city of Beverly Hills. In deciding a 12(b)(6) issue, the Court must take the factual allegation that the asserted trademarks are generic as true.

Pleading a claim for cancellation for genericness is not arduous. For example, a district court concluded that a defendant/counterclaimant sufficiently alleged that "BLK" marks were generic or descriptive for drinks that are black in color by alleging that "BLK" is the most common abbreviation for "black" and the marks had not acquired distinctiveness through establishing secondary meaning in the marketplace. *BLK Brands, LLC v. Five Tran Inv. Grp., LLC*, No. SACV 20-01932-CJC (JDEx), 2021 U.S. Dist. 139599, at *5, (C.D. Cal. Apr. 7, 2021). Another court denied a motion to dismiss counterclaims for cancellation of trademarks for genericness based on allegations that third party companies had been using the same or substantially similar marks as the plaintiffs for decades and that the marks did not function as source identifiers. *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-000609 DPP (SSx), 2014 U.S. Dist. LEXIS 150734, at *18-20 (C.D. Cal. October 23, 2014). The court also found that the counterclaim adequately pleaded the public's perception of the plaintiff's marks by alleging that each mark "does not function as a

source identifier" which alleged a fact about the public's state of mind with regard to the mark. *Id.* at *19, citing *Anti-Monopoly, Inc. v. General Mills Fun Grp.*, 611 F.2d 296, 302 (9th Cir. 1979) (a "trademark is invalid unless source identification is its primary significance").

BH Hotel contends that Kitross has failed to state a claim for genericness because it has not alleged what the good or service is for which its marks are generic. (Dkt. 27-1 at 6:9-13, citing *Elliott v. Google, Inc.*, 860 F.3d 1151, 1157 (9th Cir. 2017) and *Entrepreneur Media, Inc. v. Dermer*, No. SACV-181562-JVS (ESx), 2019 WL 4187466, at *7 (C.D. Cal. July 22) and 15 U.S.C. section 1063(4).) But here, BH Hotel has alleged in its complaint that its asserted trademarks are registered in association with only three related services: hotel, restaurant, and catering services. (Dkt. 23 at 2.) The counterclaim gives context to the allegations in the counterclaim for cancellation. While Kitross has not alleged in so many words that the registered mark is generic for hotel, restaurant, and catering services, its allegations in its counterclaim for cancelation make that clear. Kitross also alleged that the USPTO granted registrations for BH Hotel's two asserted trademarks for the goods and services "Hotel, Restaurant and Catering Services," unaware that the California courts had found the marks geographically descriptive for BH Hotel's business. (Dkt. 24, ¶¶ 22.) As BH Hotel described its business to the USPTO as hotel, restaurant, and catering services, there is no uncertainty as to which services Kitross alleges the registered marks have become generic.

Kitross also alleged that the "primary meaning, and perhaps the only meaning of "Beverly Hills" as a standalone phrase is the city, not BH Hotel." (*Id.* at ¶ 42.) Kitross alleged that when the hotel opened in 1912, it was located in a subdivision of the city of Los Angeles already known as Beverly Hills. (*Id.* at ¶ 7.) Kitross further alleges the findings of the California Superior Court in previous trademark litigation that the words "Beverly Hills" are geographical; that the word "Hotel" is descriptive of a certain type of business; that the words "Beverly Hills Hotel" were geographical

and descriptive of the BH Hotel's business; and that the name "Beverly Hills Hotel" had not acquired secondary meaning. (*Id*. at ¶¶ 12-16.)  It can be difficult to determine where the line is between weak descriptive marks and generic marks.  *Filipino Yellow Pages, Inc. v. Asian Journal Pubs., Inc*., 198 F.3d 1143, 1151 (9th Cir. 1999). Therefore, allegations that support descriptiveness also support genericness.

The counterclaim alleges facts about popular, successful television series and films set in the city of Beverly Hills, including *The Beverly Hillbillies*, *Beverly Hills Cop I-III*, *Troop Beverly Hills*, and *Beverly Hills 90210*, all viewed by millions of people in the United States. (*Id*. at ¶¶ 17-21.)  These facts show that "Beverly Hills" continues to be geographically descriptive, as California's courts found in the 1950s, and even more so." (*Id*. at ¶ 21.)  For all these reasons, the Counterclaim, read as a whole, alleges that "The Beverly Hills Hotel" mark is a generic name for a hotel located in Beverly Hills, i.e. for hotel, restaurant, and catering services.  In the *Dermer* case, the pleading problem was that the trademark owner had six registrations for "Entrepreneur" encompassing over twenty kinds of goods and services.  2019 WL 4187466, at *16.  The Court concluded that the counterclaim had not adequately alleged how EMI's ENTREPRENEUR mark could simultaneously identify over twenty different goods and services.  *Id*.  Here, there is no such ambiguity.  If the Court disagrees, Kitross should be granted leave to amend its counterclaim to specifically allege that the trademark is generic for hotel, restaurant, and catering services in the city of Beverly Hills, California.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### C.   Kitross has Stated a Claim for Tortious Interference.

Kitross has sufficiently stated facts showing "independently wrongful conduct" by BH Hotel.  In *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995) the California Supreme Court held that a plaintiff seeking to recover

**15**

damages for interference with prospective economic relations must plead and prove as part of its case-in-chief that in the context of the third element the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself." In satisfying the "independently wrongful conduct" requirement, "Defendant's liability may arise from improper motives or from the use of improper means.  They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law or perhaps an established standard of a trade or profession." *Id*. at 385 (citations omitted). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Edwards v. Arthur Anderson,* 44 Cal.4th 937, 944 (2008).

Commonly included among improper means are actions which are independently actionable, violations of federal or state law or unethical business practices, e.g., violence, misrepresentation, unfounded litigation, defamation, trade libel or trademark infringement." *PMC, Inc. v. Saban Entertainment, Inc.*, 45 Cal.App.4th 579, 602-603 (1996); *Angus v. Transnational Auto. Grp., Inc., No. CV0900143*, 2010 WL 11507997, at \*13 (C.D. Cal. Sept. 20, 2010). In Edwards, requiring an employee to sign an illegal noncompetition agreement was found to be an independently wrongful act. *Edwards*, 44 Cal.4th at 944. In *Mammoth Hardware v. Ace Hardware, No. Civ. S-05-2486 LKK/JFM*, 2006 WL 279307 at \*11-14 (E.D. Cal. Feb. 6, 2006), the court held that a violation of the implied covenant of good faith and fair dealing in the franchise agreement and false representations constituted independently wrongful acts.  In *Stevenson Real Estate Services v. CB Richard Ellis Real Estate Services, et al.*, 138 Cal.App.4th 1215, 1223 (2006), the court held that the defendant's violation of the Rules of Professional Conduct of the American Industrial Real Estate Association constituted the type of wrongful conduct that will support a cause of action for intentional interference with prospective economic advantage.

**OPPOSITION TO MOTION TO DISMISS AND STRIKE PORTIONS OF COUNTERCLAIM**

In this case, Kitross has alleged that BH Hotel has wrongfully enforced its otherwise unenforceable trademark against Kitross.  In addition, BH Hotel has also attempted to enforce its unenforceable trademark against other companies in an effort to prohibit them from supplying Kitross with merchandise for sale because those items contain the phrase, "Beverly Hills".  Specifically, as alleged in paragraph 35 of its Counterclaim, Kitross alleges:

> "The phrase 'Beverly Hills' is an ornamental feature of the products, not an identifier of their source. One product is a pillow with a needlepoint cover, declaring, 'rather be in Beverly Hills,' against a pink background with large green banana leaves. None of the products has both words on the same line like the registered trademarks and none uses the whole phrase 'The Beverly Hills Hotel.' A green sweatshirt and a pink hoodie each had a black sewn-on label bearing a JET logo and the name 'John Eshaya' to indicate their source and manufacturer."

BH Hotel sent a cease and desist letter to JET and as a result JET stopped providing Kitross with pillows.  BH Hotel's wrongful attempts to selectively enforce its trademark against Kitross has caused damage to Kitross evidenced by Kitross' lost sales.

### D. The Allegations BH Hotel Seeks to Strike are Relevant to Issues Raised by its Own Complaint and by Kitross' Counterclaim.

#### 1. Motions to strike are disfavored and should be denied if the allegations at issue might be relevant to issues in action.

Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001). Accordingly, motions to strike "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008. "[E]ven when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed. Apr.

2022).

In ruling on a motion to strike, "the court must view the pleading under attack in the light most favorable to the pleader." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F.Supp.2d 556, 561 (C.D. Cal. 2005); *see also Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 (9th Cir. 1992). Whether to grant a motion to strike under Rule 12(f) is left to the court's discretion. *Federal Sav. and Loan v. Gemini Mgmt.*, 921 F.2d 241, 243 (9th Cir. 1990); *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F.Supp.2d 1028, 1033 (C.D. Cal. 2002) ("[W]hether to grant a motion to strike lies within the sound discretion of the district court.")  The allegations BH Hotel seeks to strike all relate to disputed issues of likelihood of confusion and/or dilution and therefore should not be stricken.

> **2.    Allegations about third parties' use of the name "Beverly Hills" are relevant to likelihood of confusion and dilution, as well as numerous defenses.**

BH Hotel argues that all allegations in the counterclaim[2] about third party uses of the name "Beverly Hills" should be stricken as immaterial.  A matter is immaterial when it has no essential or important relationship to the claim for relief and is impertinent when it does not pertain and is unnecessary to the issues in question. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).  Here, Kitross' allegations about third party uses are material for several reasons.  First, one of the factors relevant to likelihood of confusion is the strength of the asserted trademark.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (citing *AMF Inc. v. Sleekcraft*

---

[2] BH Hotel's brief is confusing as to exactly what allegations BH Hotel is asking the Court to strike.  For the geographically descriptive allegations, it identifies Kitross' answer and counterclaim, pg. 6, ln.12 – pg. 14, ln. 27, but the counterclaim begins on page 10.  The first allegation in the Counterclaim about third party use of "Beverly Hills" is in paragraph 9 on page 11.

*Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  Third party uses in related fields are relevant to the strength of the plaintiff's mark.  *See, e.g. Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F. 3d 1074, 1081 (9th Cir. 2020) (noting that evidence of third-party uses of trademarked phrase showed it was not unique or strong); *Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1259, n. 11 (9th Cir. 2022) (rejecting appellant's argument that the district court should not have considered third party uses of the mark to show that the mark was not arbitrary); *Scat Enters. v. FCA U.S. LLC*, No. CV-14-7995R, 2017 U.S. Dist. LEXIS 207149, *11-12 (C.D. Cal. June 8, 2017) (evidence of third-party uses is a factor in determining whether likelihood of confusion between marks exists); *Aliign Activation Wear, LLC v. Lululemon Athletica Canada, Inc.*, No. 2:20-cv-03339-SVW-JEM, 2021 U.S. Dist. LEXIS 139350, at *13-14 (C.D. Cal. June 7, 2021) (finding widespread use of "align" in yoga and athletic wear undermined the strength of plaintiff's "Aliign Activation Wear" mark).

In addition to being relevant evidence of the strength of the mark, third party uses of similar marks are relevant to dilution.  To establish dilution, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1)); *see also Adidas Am., Inc. v. Skechers, Inc*., 890 F. 3d 747, 747, 758 (9th Cir. 2018).

Third, in addition to its relevance for likelihood of confusion and to dilution, plaintiff's own claims, evidence of third party uses of "Beverly Hills" even without Williams' stylized lettering, is relevant to show that its primary meaning is a geographical location, the city of Beverly Hills and therefore not inherently distinctive *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) ("Japan Telecom" is geographically descriptive; affirming summary judgment for defendant on Lanham Act and California unfair competition claims); *New York Stock*

*Exch., Inc. v. New York, New York Hotel*, 69 F. Supp.2d 479, 489 (S.D.N.Y. 2001) (mark "New York Stock Exchange" was not distinctive because it merely combines the generic term "stock exchange" with the geographic term "New York"); *Weintraub v. Sotheby's Int'l Realty, Inc.*, No. 2:18-cv-6922-AB (KSx), 2018 U.S. Dist. LEXIS 223905, *8 (C.D. Cal. Nov. 1, 2018) (finding "Malibu Estates" geographically descriptive; granting defendant's motion to dismiss); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,* 680 F.Supp. 2d 1107, 1118-19 ("Sand Hill Advisors is primarily geographically descriptive and therefore a weak mark, especially where other companies used "Sand Hill" in their business names).   Here, Kitross includes allegations that in the fifties, California courts found the words "Beverly Hills" geographical, and found that BH Hotel's use of the name "Beverly Hills Hotel" since 1912 had not resulted in the name acquiring any secondary meaning or special significance in the mind of the public generally or BH Hotel going public.  (Dkt. 24, ¶¶ 12-14.)

Because decades have passed since those decisions, Kitross also includes allegations that since those decisions, television and movies have made the city of Beverly Hills a household name.  (*Id*. at ¶¶ 17-21.)  These allegations are all relevant to how the public understands the phrase "Beverly Hills," which is material to likelihood of confusion.

Fourth, evidence of third-party uses is relevant to Kitross' defense that its use is not trademark use but ornamental or aesthetically functional use.  Not every use of a trademark is source-identifying.   The Ninth Circuit recognizes the aesthetic functionality doctrine adopted in *International Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912 (9th Cir. 1980) and clarified in *Au-Tomotive Gold, Inc. v. Volkswagen of Am. Inc.,* 457 F.3d 1062, 1067 (9th Cir. 2006).  While BH Hotel uses "THE BEVERLY HILLS HOTEL" with and without stylized lettering, as a trademark for its hotel, restaurant, and catering services, Kitross uses the phrase "Beverly Hills," with and without stylized lettering, as an ornamental feature of the

clothing and pillow displaying these phrases, not to identify the source of these items.

Here, Kitross alleges that designer Ingrid Wittman sells a line of apparel, the "Beverly Hills collection" including baseball caps, sweatshirts, and other apparel, displaying the words "Beverly Hills" in Williams' stylized lettering. (*Id.* at ¶ 24.) Like Kitross' use, Wittman's use of the city name and stylized lettering is ornamental or aesthetically functional. Another allegation is that in 2019, "Mr. Brainwash" created a sculpture consisting of the words "Beverly Hills is beautiful" in large pink stylized lettering almost identical to William's stylized lettering. (*Id.* at ¶ 29.) BH Hotel cannot argue that his use of "Beverly Hills" in stylized lettering is anything but aesthetically functional. It certainly is not trademark use. While these uses alone do not prove that Kitross' use is aesthetically functional, they tend to make that fact more likely and thus are relevant. Fed. R. Civ. P. 401.

BH Hotel seems to argue that third party uses of "Beverly Hills" are irrelevant unless they also use "the Hotel's protected logo," apparently meaning the Williams-designed stylized lettering used in one of BH Hotel's registered marks. But it cites no authority for this position. All uses of "Beverly Hills" to refer to the city are relevant to allege that consumers understand Kitross' use of the phrase as referring to the city regardless of the style of the lettering.

### 3.    Allegations about BH Hotel's owner's tarnishment of BH Hotel's reputation and brand are relevant to dilution.

To establish dilution, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1)); *see also Adidas Am., Inc. v. Skechers, Inc.*, 890 F. 3d 747, 747, 758 (9th Cir. 2018). In *Adidas*, the Ninth Circuit noted that the plaintiff's theory of harm relied on the premise that its brand was viewed as premium. *Id.* So does BH Hotel. Evidence that

"the bad press and protests" against BH Hotel's owner's incorporation of extreme Islamic laws including persecution of gay people, "have tarnished the glamourous image of the Beverly Hills Hotel" and that "such extreme brand damages will be difficult to repair" (Dkt. 24, ¶¶ 32-33) tends to undermine the premise that the asserted trademarks enjoyed goodwill before Kitross began selling Beverly Hills themed merchandise using the stylized lettering of BH Hotel's trademark. Therefore, they are material to BH Hotel's claim of dilution and Kitross' counterclaim for declaratory judgment of no dilution.

BH Hotel also complains that the allegations would "inflame emotions and prejudice the Hotel." But that cat is already out of the bag. The allegations in the Kitross' counterclaim are attributed to Adweek and the Los Angeles Times, both read more widely than the pleadings in this case. "Self-dilution" and "self-tarnishment" of a trademark can take place only to the extent that the conduct causing such effects is publicly known. *Virgin Enters. v. American Longevity*, 2001 U.S. Dist. LEXIS 2315, *3-4, 2001 WL 237379, (S.D.N.Y. March 6, 2001) (vacating order for Richard Branson's deposition because evidence relevant to self-blurring and self-tarnishment defense to dilution was available in public sources). The Trademark and Lanham Acts are concerned only with the understandings, impressions, and perceptions of the consuming public. To the extent that these allegations could inflame emotions, that damage has already been done by the years of protests and the boycott themselves and the media's reporting about them.

As for the risk of prejudice to BH Hotel, a similar issue arose in *Thimes Sols., Inc. v. TP Link USA Corp.*, No. 2:19-cv-10374, 2022 U.S. Dis. LEXIS 128081, at *3 (C.D. Cal. July 11, 2022). In *Thimes*, the plaintiff moved to strike allegations in a counterclaim that its president and founder had been accused of defrauding investors in a cryptocurrency scheme. The defendant/counterclaimant asserted that the founder's reputation was relevant because it went to the alleged harm to its own reputation and goodwill. The district court found that the moving party raised serious

questions about the potential for prejudice and consumption of time at trial.  But the court nevertheless denied the motion to strike because it concluded that the moving party failed to show it would likely by prejudiced if the motion were denied because those concerns would be more properly addressed in a discovery motion or a motion in limine, if necessary.  The same logic applies here.  BH Hotel's prejudice concern can be addressed by motions in limine before trial, at which time the factual and legal record in this action will have been developed and provide better context for the court's decision.

**E.     The Court May Deny BH Hotel's Motion for Beverly Hills Violations of Local Rule 7-3.**

This Court's local rules for filing motions include L.R. 7-3, which provides:

> L.R. 7-3  Conference of Counsel Prior to Filing of Motions.  In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications under F.R.Civ.P. 65 for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.  The conference must take place at least 7 days prior to the filing of the motion.   LOCAL RULES - CENTRAL DISTRICT OF CALIFORNIA    6/1/2023 Chapter I - 20  If the parties are unable to reach a resolution that eliminates the necessity for a hearing, counsel for the moving party must include in the notice of motion a statement to the following effect:    "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."

BH Hotel, however, waited until almost five p.m. on February 8, 2024, the Friday before filing this motion on Monday, February 12, to send Kitross' counsel a purported meet-and-confer letter.  See Declaration of Peter R. Maretz, Exhibit B.  Although it refers to L.R. 7-3, this letter did not propose a conference to discuss the substance of the motion or a proposed resolution. On the contrary, it asserted that the letter itself "shall serve as a meet and confer."  The letter also largely set out different bases for the motion than those made in BH Hotel's memorandum.  With respect to the declaratory judgment claims, it made arguments that do not appear in the motion or brief.  And it did not give notice of the "mirror image rule" argument that is the

**23**

sole basis now relied on in the brief for dismissal of these counterclaims.

Second, with respect to Kitross' claim for cancellation of BH Hotel's trademarks for genericness, the letter does not raise the pleading argument discussed above. The only argument disclosed in the letter that actually appears in BH Hotel's brief is the argument that Kitross has failed to state a claim for tortious interference. Finally, the letter does not provide any notice whatsoever of BH Hotel's request to strike portions of the counterclaim under Rule 12(f).  In short, while it purports to be itself a meet-and-confer, the February 12, 2024 letter does not provide the substance of the contemplated motion, much less any potential resolution, as Rule 7-3 requires.

Because there was no conference, BH Hotel also violated Rule 7-3's requirement to include, in the notice of motion, a statement that the motion is made following the conference of counsel, and including the date the conference took place. Under these circumstances, BH Hotel has not complied with Rule 7-3.  The Court could, in its discretion, refuse to consider the motion for this reason. *See, e.g., Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427 DOC (MLGx), 2012 U.S. Dist. LEXIS 5196, 2012 WL 123146, *2 (C.D. Cal. Jan. 13, 2012).

## V.    CONCLUSION

For the reasons discussed above, the entire motion should be denied.


 DATED: February 26, 2024            KRANE & SMITH, APC

                                  By:   */s/ Jeremy D. Smith*
                                        Jeremy D. Smith
                                        Craig S. Berman
                                        Attorneys for Defendant KITROSS
                                        APPAREL LOS ANGELES, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 26, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Amy R. Monroe*
AMY R. MONROE