1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETER B. MARETZ, SBN 144826
pmaretz@stokeswagner.com
OMAR V. HERNANDEZ, SBN 340089
ohernandez@stokeswagner.com
STOKES WAGNER ALC
401 W. A Street, Suite 2235
San Diego, CA 92101
Telephone:   (619) 232-4261
Facsimile:   (619) 232-4840

Attorneys for Plaintiff SAJAHTERA, INC.
dba THE BEVERLY HILLS HOTEL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| SAJAHTERA, INC., a Delaware Corporation, dba THE BEVERLY HILLS HOTEL<br><br>Plaintiff,<br><br>v.<br><br>KITROSS APPAREL LOS ANGELES, LLC, a California limited liability company; and DOES 1 through 50,<br><br>Defendants. | Case No: 2:23-cv-08005- MWF-KS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   June 3, 2024<br>Time:  10:00 AM<br>Judge: Michael W. Fitzgerald<br>Courtroom: 5A |

Stokes Wagner ALC
401 W. A Street, Suite 2235
San Diego, CA 92101
(619) 232-4261

# TABLE OF CONTENTS

I.   **INTRODUCTION** ................................................................................ **4**

II.  **FACTUAL BACKGROUND** ............................................................... **4**

III.  **LEGAL AUTHORITY** ...................................................................... **9**

  A.  **Legal Standard for Preliminary Injunction** ................................ **9**

  B.  **The Hotel is Entitled to a Preliminary Injunction** ................... **11**

     i.   The Hotel is Likely to Succeed on the Merits of its Claim Against Kitross ................................................................................... 11

     ii.  The Hotel is Entitled to a Statutory Presumption of Irreparable Harm 14

     iii.  Balance of Hardships Tips in the Hotel's Favor ................................ 15

     iv.  A Preliminary Injunction is in the Public Interest ............................ 16

IV.  **CONCLUSION** ................................................................................ **16**

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF AUTHORITIES

## Cases

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198 (3d Cir. 2000) ................................................................................................................12

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d. 1127, 1131 ..............................9

*AMP Inc. v. Foy*, 540 F.2d 1181, 1185–86 (4th Cir.1976) ......................................16

*Benihana, Inc. v. Benihana of Tokyo*, LLC, 784 F.3d 887 (2d Cir. 2015)..............10

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014)..................11

*Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 157–58 (9th Cir. 1963) ..................................................................................................................13

*Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).........................10

*Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1401 (9thCir. 1992) ....................9

*Hoosier Energy Rural Elec. Co-op, Inc. v. John Hancock Life Ins. Co.,* 582 F.3d 721, 725 (7th Cir. 2009) .....................................................................................10

*K–2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir.1972) .........................11

*Kadant, Inc. v. Seeley Mach.*, Inc., 244 F. Supp. 2d 19 (N.D.N.Y. 2003) ...............15

*Lopez v. Heckler*, 725 F.2d 1489, 1509 (9thCir.)....................................................9

*Merry Maids Ltd. P'ship v. Kamara*, 33 F.Supp.2d 443, 446 (D.Md.1998) ...........16

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,* 290 F.3d 578 (3d Cir. 2002).........................................................................15

*Rebel Debutante LLC v. Forsythe Cosm. Grp.,* Ltd., 799 F. Supp. 2d 558 (M.D.N.C. 2011).....................................................................................................16

*Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) .........11

*Rosen Entm't Sys., LP v. Icon Enters. Inc.*, 359 F. Supp. 2d 902, 905 (C.D. Cal. 2005) ....................................................................................................................10

*Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190, 198 (9th Cir.1953) ...............................................................................................................10

*Suzie's Brewery Co. v. Anheuser-Busch Cos.*, 2021 519 F. Supp. 3d 839, 844 (D. Or. 2021) ...............................................................................................................10

*Toolchex*, 634 F.Supp.2d at 594 .............................................................................16

*Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008)* ...............................9, 11

## Statutes

469 U.S. 1082 (1984) ...............................................................................................9

California Law, Business & Professions Code §17200 ...........................................11

Civil, § 2949 at 471 (1973) .....................................................................................10

Fed. R. Civ. P. 65(b)(1)(A). ....................................................................................9

Lanham Act, 15 U.S.C § 1114 ................................................................................11

Lanham Act, 15 U.S.C. § 1125(c)...........................................................................11

Lanham Act. 15 U.S.C. § 1501 et seq. Section 32(1) ............................................11

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## I.   <u>INTRODUCTION</u>

A true desire for guest-experience-excellence and high-quality standards by The Beverly Hills Hotel (the "Hotel") over 100 years has built the Hotel's brand into one of the most iconic and recognizable hotels in the United States and throughout the world. This matter is about the Hotel exercising its legal right to protect the integrity and quality of its brand and goodwill. Specifically, the Hotel claims (1) Trademark Infringement, (2), dilution, and (3) unfair competition in violation of California's unfair competition law against the Kitross Apparel LLC ("Kitross").

The Hotel filed its complaint against Kitross on September 25, 2023. After filing its Complaint and in attempt to limit litigation costs, both parties opened up settlement discussions. Kitross represented to the Hotel it would stop selling its infringing merchandise. The Hotel reasonably relied on these representations, but Kitross's actions prove it has no intention of stopping its infringing activity. Recently, Kitross continues to tarnish the Hotel's Mark by using the Hotel's Mark, the recognizable banana leaf wallpaper and iconic pink and green on a replica of a handgun. As of the date of this motion, Kitross continues to sell infringing merchandise and products, including on its website. It is clear Kitross is acting in bad faith and benefitting off the goodwill of the Hotel.

Thus, The Hotel is seeking relief in its Motion for Preliminary Injunction. The Hotel requests that the Court enjoin Kitross from advertising, selling, distributing, or manufacturing, any products, apparel, images, merchandise, or accessories that use or contain the Hotel's protected Mark.

## II.   <u>FACTUAL BACKGROUND</u>

The Hotel was built in 1912, before there was a city called Beverly Hills. (See Declaration of Brittany Williams ¶ 4 ("Williams Dec.")) The Hotel is recognized as one of the most iconic and luxurious hotels in the world with celebrity clientele and exceptional service. (Williams Dec. ¶ 5) In the 1940s, the Hotel underwent a major renovation and hired an iconic architect of that time, Paul Revere Williams ("Mr.

Williams"), who designed several other iconic Los Angeles structures and designed homes for various celebrities. (Williams Dec. ¶ 10) As part of that renovation, Mr. Williams designed multiple aspects of the Hotel including its Crescent Wing, the notorious Polo Lounge and Fountain Coffee Room as well as other aspects of the Hotel. While he is not responsible for the mission-style structure that is the central building of the Hotel, the Crescent Wing, which includes the striking façade bearing the Hotel's logo at issue in this litigation, is his work product. In fact, that logo is Paul Revere Williams's *handwriting.* (Williams Dec. ¶ 11) The Hotel logo and its distinctive font is not just a trademark concocted by some marketing consultant. In many ways, it defines the heritage of the Hotel. (Williams Dec. ¶ 12)

The Hotel first registered the Mark "The Beverly Hills Hotel" in text and in the stylized lettering used on its façade, signs, public relations materials, website, and merchandise on July 26, 1988. (Williams Dec. ¶ 6) To date, the Hotel has retained federal trademark protection for over 35 years. (Williams Dec. ¶ 7)

In 2012, the Hotel was named the first historic landmark of the City of Beverly Hills. (Williams Dec. ¶ 8) The Hotel is one of the most, if not the most, recognizable hotels in the world having been featured in various films, television shows etc. – and its stylized lettering and trademark of "The Beverly Hills Hotel" is just as reputable and recognizable in the public eye. (Williams Dec. ¶ 9) [1]

Kitross is a corporation with its principal place of business in Los Angeles, California. (*Id.*, ¶ 6; see Declaration of Jeremy D. Smith ["Smith Decl.], Dkt (14) ¶2.) Kitross operates under the name "Kitson," and features three brick-and-mortar storefronts, including one located at 420 North Beverly Drive, Beverly Hills, California 90210 – approximately 2 miles away from the Hotel.  It also operates an online store, which can be found at www.kitsonlosangeles.com, which sells a variety of infringing products at issue in this litigation including but not limited to t-shirts,

---

[1] To be clear, the Hotel does not contest Kitross's use of the words "Beverly Hills" other than in the stylized font owned by the Hotel.  It does contest its use of the words "The Beverly Hills Hotel" regardless the font.

hoodies, sweats, shorts, and accessories – some of which are pictured below. The first two photographs below are screenshots taken directly from the Kitross website. Additionally, the last three photos identified below are images taken from Kitross's brick-and-mortar storefront where they have unlawfully continued to sell infringing merchandise despite this litigation. Kitross's actions speak for themselves, they have no intention to stop infringing on the Hotel's Mark and economically profiting off the Hotel's goodwill.



In August of 2023, the Hotel learned through a patron of the Hotel that Kitross was selling merchandise bearing the Hotel's protected mark. (Williams Dec. ¶ 13) The products included but were not limited to a green sweatshirt and a pink hoodie which were sold both, and continue to be sold, inside Kitross's Beverly Hills location and their online store.



As shown in the photograph above, Kitross, to market its brand and associate itself with the Hotel, uses a confusingly similar and almost identical banana leaf wallpaper that is widely associated with the Hotel as it has been featured throughout guest room hallways and other public spaces since 1949. (Williams Dec. ¶ 16) In fact, the Hotel's gift shop, which is actually known as the Signature Shop, features souvenir items including t-shirts, sweatshirts and other apparel items with the Hotel's protected logo in pink and green as well as incorporating the banana leaf print, just as Kitross was selling without authorization from the Hotel. (Williams Dec. ¶ 17)

The Hotel sent a cease and desist letter to Kitross on August 31, 2023, alleging trademark infringement, trademark dilution, and violation of California's unfair competition law, and demanded that Kitross immediately stop selling infringing merchandise.  While Kitross ownership indicated it would stop under certain

1  circumstances, acknowledging there were other fonts it could use, it has not stopped.
2  The Hotel sent a second cease and desist letter on September 13, 2023, to no avail.

3          As of this writing, the Kitross website still offers infringing merchandise for
4  sale. Specifically, it was recently discovered that, on its website, Kitross is selling
5  unlawful images bearing the Hotel's *full name* "Beverly Hills Hotel" and "Beverly
6  Hills Hotel and Bungalows" – both names which are registered trademarks (Kitross's
7  unlawful image is pictured on the left). (Williams Dec. ¶ 19) One of the infringing
8  products is a nearly identical image of an exclusive collaboration between the Hotel
9  and French luxury designer, Dior – as pictured below on the right. (Williams Dec. ¶
10  20) In light of this information, Kitross *cannot* deny they are profiting off the Hotel's
11  Marks and goodwill.



22          Kitross attempts to align itself with the Hotel so it can be more marketable and
23  attract consumers to buy more of its infringing merchandise. Kitross has represented
24  they had "many different fonts" they could use, but purposefully and intentionally
25  used the Hotel's protected stylized lettering so the merchandise would be more
26  marketable and recognizable in the Beverly Hills community and beyond. The Hotel
27  has garnered an extraordinary amount of recognition and influence such that the
28  majority of consumers, whether the general public or iconic celebrities, public

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

figures, or politicians, want to align, affiliate, or associate themselves with the Hotel. Thus, the Hotel respectfully requests this Court *grant* the Hotel's preliminary injunction.

## III.    LEGAL AUTHORITY

### A.    Legal Standard for Preliminary Injunction

The same legal standard applies for issuing a temporary restraining order and a preliminary injunction. The purpose of both is to preserve the status quo pending a final determination of the merits of the action.  See *Lopez v. Heckler*, 725 F.2d 1489, 1509 (9thCir.), vacated on other grounds, 469 U.S. 1082 (1984) (citing J. Moore & J. Lucas, Moore's Federal Practice ¶65.04[1] at 65-36 (2d ed. 1983) (purpose is to preserve status quo pending final determination of action after full hearing).

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court may grant injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A).  The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d. 1127, 1131.

In the Ninth Circuit, a plaintiff is entitled to a preliminary injunction if she satisfies either of the two tests: (1) the *Winter* factor test; or (2) the "sliding scale" test, also referred to as the "serious questions" test. See *Cottrell*, 632 F.3d1127, 1135. These are not two separate tests but merely extremes of a single continuum. *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1401 (9thCir. 1992). The sliding scale test requires a slightly weaker showing of success on the merits to be outweighed by strong equitable considerations. See *Cottrell*, at 1134-35.

Under the *Winter* factor test, a plaintiff is entitled to a preliminary injunction if she establishes that (1) she is "likely to succeed on the merits"; (2) the "balance of the equities tips in (plaintiff's) favor"; (3) she is "likely to suffer irreparable harm in the absence of the preliminary relief"; and (4) preliminary injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008).*

Under the sliding scale test, a plaintiff is entitled to a preliminary injunction if she establishes: (1) "serious questions going to the merits"; (2) "a balance of hardships that tips sharply towards the plaintiff"; (3) "a likelihood of irreparable injury"; and (4) a preliminary injunction is in the public interest. *Cottrell*, 632 F.3d. 1127, 113. (noting that the last two factors are identical to two of the factors in *Winter*.) While the test "requires the plaintiff to make a showing on all four prongs," the showing need not be equally strong. *Cottrell*, 632 F.3d at 1134. For example, the Ninth Circuit has stated: "[T]he more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Hoosier Energy Rural Elec. Co-op, Inc. v. John Hancock Life Ins. Co.,* 582 F.3d 721, 725 (7th Cir. 2009). Similarly, "[i]f the balance of the harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Benihana, Inc. v. Benihana of Tokyo*, LLC, 784 F.3d 887 (2d Cir. 2015); *Suzie's Brewery Co. v. Anheuser-Busch Cos.*, 2021 519 F. Supp. 3d 839, 844 (D. Or. 2021) (citing *Cottrell*, 632 F.3d 1127, 1131-32 and stating that the Winter decision did not disturb the Ninth Circuit's alternative "serious questions" test).)

Due to the urgency of obtaining preliminary injunctive relief, the "trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, Federal Practice and Procedure, Civil, § 2949 at 471 (1973)); see also *Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190, 198 (9th Cir.1953) (preliminary injunction may be granted on affidavits); *Rosen Entm't Sys., LP v. Icon Enters. Inc*., 359 F. Supp. 2d 902, 905 (C.D. Cal. 2005) (noting that district courts have the discretion "to consider otherwise inadmissible evidence in ruling on the merits of an application for a preliminary injunction"). A preliminary injunction may be granted based on affidavits or even the allegations in a "verified complaint," despite their lack of

conformity with the Federal Rules of Evidence regarding hearsay and personal knowledge. See *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988); *K–2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir.1972) (trial court may consider allegations in verified complaint in issuing preliminary injunction).

### B.    The Hotel is Entitled to a Preliminary Injunction

Under either the *Winter* or sliding scale test, the Hotel is entitled to a temporary restraining order and preliminary injunction to enjoin Kitross from infringing on the Hotel's Mark immediately.

### i.    The Hotel is Likely to Succeed on the Merits of its Claim Against Kitross

In order to obtain a preliminary injunction, a plaintiff must show that it is "likely" to prevail on the merits. See *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008). A "likelihood" does not mean more likely than not. And a "likelihood' of success per se is not an absolute requirement" for a preliminary injunction. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014).

In the instant lawsuit, the Hotel is likely to succeed on the merits of its claims: (1) trademark infringement under the Lanham Act, 15 U.S.C § 1114, (2) trademark dilution under Lanham Act, 15 U.S.C. § 1125(c), and (3) unfair competition in violation of California Law, Business & Professions Code §17200.

The Hotel is likely to succeed on its claim against Kitross for violating §32 (1) of the Lanham Act. 15 U.S.C. § 1501 et seq. Section 32(1) provides that:

"Any person who shall, without the consent of the registrant—(a) use in commerce (b) any reproduction, counterfeit, copy, or colorable imitation of a registered mark, (c) in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is (d) likely to cause confusion, or to cause mistake, or to deceive; … shall be liable in a civil action by the registrant for the remedies hereinafter provided."

/ / /

To establish trademark infringement, a plaintiff must show that (1) it has a valid and legally protectable mark; (2) it owns the mark, and (3) defendant's use of the mark to identify goods or services causes a likelihood of confusion as to the affiliation, connection, or associations of defendant with plaintiff, or as to origin, sponsorship, or approval of defendant's goods or services by plaintiff. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198 (3d Cir. 2000).

### Valid and Legally Protectable Mark

The Hotel recently defeated Kitross's 12(b)(6) motion on Kitross's assertion that Kitross's use of the Hotel's Mark was aesthetically functional and not infringing. This Court strongly disagreed. Without rehashing this Court's order, the Court denied Kitross's motion and properly agreed with the Hotel that the Mark's federally registered stylized handwriting of Paul Revere Williams as the Hotel's trademark, is entitled to trademark protection. Kitross's use was not merely "aesthetically functional." Thus, the Hotel's Mark is valid and legally protectable.

### The Hotel Owns the Mark

As the facts, and the attached Verified Complaint, suggest the Hotel registered its Marks on July 26, 1988. The approved USPTO registrations show, and Kitross does not dispute, that the Hotel owns the Mark. Along with ownership, the Hotel has consistently monitored its Mark to maintain and strengthen the Mark.

### Likelihood of Confusion

The test of likelihood of confusion is the keystone of trademark infringement. Essentially the question is whether there will be a likelihood of confusion amongst consumers for the infringing products. The answer will be yes. Kitross's infringement focuses on the product or source confusion – essentially confusion over source, or sponsorship, affiliation, or connection of the infringing goods to the Hotel. Kitross *intentionally* used the Hotel's stylized lettering when they knew they could use "many other different fonts" as admitted by Kitross's owner, Fraser Ross. Kitross may argue that its products differ to the Hotel's products and/or services and because

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

of that, a reasonable consumer would not reasonably confuse the two products. However, that argument falls flat.

*Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 157–58 (9th Cir. 1963), is controlling and on point. In *Maier,* the Ninth Circuit enjoined a brewing company, Maier Brewing Co., from using the name "Black & White" on their beer under the Lanham Act for trademark infringement. The Court held that the brewing company infringed on the trademark "Black & White" for Scotch whisky and held that the name "Black & White" of defendant's beer was likely to cause confusion as to source of origin thereof in mind of the average purchaser because of the whisky's reputation in the alcoholic beverage industry. Maier's evidence showed they knew of Fleischman's reputation and understood it to be one of the most popular Scotch whisky brands in the industry.

*Maier* argued, as Kitross may argue, that because whisky and beer are different products, the average consumer would not be confused by the two. The court disagreed. In fact, the court recognized *Maier's* evidence which showed the name "Black & White" used in many unrelated businesses or industries, but this evidence was not persuasive and the use of the name "Black & White" in wholly unrelated products cannot possibly cause confusion or mistake. (*Id* at 160.) The court looked at the alcoholic beverage industry as a whole and determined that the "name 'Black & White' has come to mean Scotch whisky." (*Id* at 154.) Because of this, the average consumer would be confused between the two products and if the name "Black & White" was on a beer, consumers would likely assume the beer is affiliated or connected to the Scotch whisky brand. (*Id* at 156)

Furthermore, the Court in *Maier*, identified a presumption of a likelihood of confusion – a presumption which is the majority view – when the evidence shows the accused infringers adopted another's name "deliberately with a view to obtain some advantage from the good will, good name and good trade which another has built up, then the presumption is readily drawn." (*Id* at 156) As discussed above,

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Kitross was familiar with the Hotel, was keenly aware of the Hotel's Mark, and the Hotel's overall goodwill and iconic reputation. Kitross's owner admitted they have many fonts they could use from, and they do use other stylistic fonts, but deliberately chose the Hotel's Mark to associate its products to the Hotel for their own business financial gain. The Hotel's evidence supports presumption of confusion.

Moreover, to further bolster the Hotel's position of the likelihood of confusion, the Hotel received an email communication from a patron of the Hotel, Mr. Anderson. (Williams Dec ¶ 13). Mr. Anderson's emailed contained a photograph depicting Kitross selling, in its Beverly Hills location, a variety of clothing, products, and accessories with the words "Beverly Hills" written in the Hotel's protected stylized lettering all behind the backdrop of what looks like an identical copy of the Hotel's iconic pink and green banana leaf wallpaper. Mr. Anderson emailed the Hotel immediately and stated, "your logo is all over the place" referring to Kitross's Beverly Hills storefront. (Williams Dec. ¶ 14) Mr. Anderson's email communication, combined with the identical protected stylized lettering, pink and green banana leaf wallpaper, is evidence of association, infringement, and consumer confusion the Hotel intends to protect and prevent. Mr. Anderson's statement, along with the declaration evidence provided in highlighting the Hotel's reputation in the retail/hospitality industry is sufficient to demonstrate likelihood of confusion between Kitross's infringing products and the Hotel's Mark. Therefore, since the presumption of likelihood of confusion is triggered, and the evidence supports this element, this Court must grant the preliminary injunction.

### ii. The Hotel is Entitled to a Statutory Presumption of Irreparable Harm

Pursuant to the 2020 Amendment to the Lanham Act, "a plaintiff seeking any injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a likelihood of success on the merits for a violation identified in this subsection in the case of a motion for preliminary injunction or temporary restraining

order." § 30:47. Irreparable injury—The statutory presumption of irreparable injury, 5 McCarthy on Trademarks and Unfair Competition § 30:47 (5th ed.) See *Kadant, Inc. v. Seeley Mach.*, Inc., 244 F. Supp. 2d 19 (N.D.N.Y. 2003) (holding plaintiff showed likelihood of confusion with respect to trademark claim which demonstrated irreparable harm and likelihood of success on merits). Because, as discussed above, the Hotel demonstrates its likelihood of success on the merits, it is entitled to the statutory presumption of irreparable harm. (Id. at 27)

### iii.    Balance of Hardships Tips in the Hotel's Favor

Kitross sells merchandise both in-store at multiple locations in the Los Angeles County and online. It sells a variety of different products, designs, logos, and brands. Kitross owner stated that the store has "many different fonts" to choose from, but they deliberately and intentionally used the Hotel's protected stylized lettering. The Hotel is not asking this Court to enjoin and prohibit Kitross from using the phrase "Beverly Hills." The Hotel is specifically referring to the protected stylized lettering which this Court already recognized is entitled to protection. Kitross can still sell other non-infringing products, to which they have plenty based on their website, and can use the phrase "Beverly Hills" in any other way which does not infringe on the Hotel's Mark. Kitross cannot argue it did not have notice of its infringement because the Hotel sent Kitross a cease-and-desist prior to initiating litigation. The Hotel clearly stated its ownership over its protected Mark, but Kitross selfishly chose to ignore the facts and the law.

While Kitross might argue they will suffer financial loss if the Court grants the injunction, this temporary financial loss does *not* outweigh the damage to reputation the Hotel has spent decades building. Such injury that a defendant might suffer if preliminarily enjoined "may be discounted by the fact that the defendant brought the injury upon itself." 5 McCarthy on Trademarks and Unfair Competition § 30:51 (5th ed.) citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,* 290 F.3d 578 (3d Cir. 2002)

Furthermore, denying the preliminary injunction would allow Kitross to continue infringing and diluting the Hotel's Mark and would be fundamentally against what trademark law is intended to protect. Thus, the balance of hardships unequivocally tips in favor of the Hotel.

### iv.    A Preliminary Injunction is in the Public Interest

It is longstanding policy that there is a strong public interest in preventing trademark infringement. Indeed, the "purpose of a trademark is to protect the public from confusion about 'the identity of the enterprise from which goods and services are purchased.'" *Rebel Debutante LLC v. Forsythe Cosm. Grp.,* Ltd., 799 F. Supp. 2d 558 (M.D.N.C. 2011) citing *Toolchex*, 634 F.Supp.2d at 594 (quoting *AMP Inc. v. Foy*, 540 F.2d 1181, 1185–86 (4th Cir.1976)); see *Merry Maids Ltd. P'ship v. Kamara*, 33 F.Supp.2d 443, 446 (D.Md.1998) ("Preventing infringement serves the public interest in preventing consumer confusion.").

If this court finds that the Hotel shows a likelihood of success on the merits it must grant the preliminary injunction in favor of the Hotel. This Court has the responsibility and duty to enjoin Kitross's infringing activity and protect the public interest from further confusing consumers and allowing Kitross to deceive its consumers on an affiliation or sponsorship that simply does not exist.

### IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Hotel respectfully requests that this Court enter the proposed Preliminary Injunction and enjoin Kitross as set forth in the Proposed Order.

DATED:  April 30, 2024          STOKES WAGNER ALC

By: _____

PETER B. MARETZ
OMAR V. HERNANDEZ
Attorneys for Plaintiff SAJAHTERA,
INC. DBA THE BEVERLY HILLS
HOTEL

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which automatically generates a Notice of Electronic Filing ("NEF") at the time said document is filed to all CM/ECF Users and counsel of record who have appeared in this case. Service with this NEF constitutes service pursuant to Federal Rule of Civil Procedure 5(b)(E).

DATED:  April 30, 2024

STOKES WAGNER ALC

By: _____

PETER B. MARETZ
OMAR V. HERNANDEZ
Attorneys for Plaintiff SAJAHTERA, INC. DBA THE BEVERLY HILLS HOTEL

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**