UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 23-8005-MWF (KSx) | Date: | June 10, 2024 |
| Title: | Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al. | | |

Present: The Honorable **MICHAEL W. FITZGERALD**, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION [20]

Before the Court is Plaintiff Sajahtera, Inc.'s (d/b/a The Beverly Hills Hotel) Motion for Preliminary Injunction (the "Motion"), filed on April 30, 2024. (Docket No. 36). Defendant Kitross Apparel Los Angeles, LLC filed an Opposition on May 13, 2024. (Docket No. 37). Plaintiff filed a Reply on May 20, 2024. (Docket No. 38).

The Court has read and considered the papers on the Motion and held a hearing on **June 3, 2024**.

For the reasons set forth below, the Motion is **GRANTED**. Plaintiff has met its burden by showing that (1) it is likely to succeed on its trademark infringement claim; (2) it will suffer irreparable harm absent an injunction; (3) the equities tilt sharply in its favor; and (4) an injunction is in the public interest. Specifically, the use of the Williams Font is highly probative of success pursuant to the *Sleekcraft* factors.

**I.    BACKGROUND**

Plaintiff, a hotel located in Beverly Hills, California, initiated this action on September 25, 2023. (Complaint (Docket No. 1) ¶ 5). The Complaint alleges that Defendant is a retailer with three brick-and-mortar stores, one of which is also located in Beverly Hills, California. (*Id.* ¶ 6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-8005-MWF (KSx)**                           **Date:  June 10, 2024**
**Title:**     Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

  According to the Complaint, Defendant sold products that knowingly infringed on two of Plaintiff's trademarks registered in association with hotel, restaurant, and catering services (collectively, "the Marks") as depicted in the following screenshots:

 1.  United States Trademark Registration No. 1498143

THE BEVERLY HILLS HOTEL

 2.  United States Trademark Registration No. 1516814

*The Beverly Hills Hotel*

(*Id.* ¶ 8, Ex. A).  Based on these allegations, the Complaint alleges three claims for relief: (1) trademark infringement under 15 U.S.C. § 1125(a); (2) trademark dilution under 15 U.S.C. § 1125(c); and (3) unfair competition under California Business and Professions Code section 17200.  (*Id.* ¶¶ 19–42).

  Defendant previously moved to dismiss Plaintiff's claims, arguing that, among other things, the Marks are not protectable because they are aesthetically functional.  (Docket No. 14 at 4–9).  The Court rejected this argument and denied the motion to dismiss in its entirety (the "MTD Order").  (Docket No. 23).

  Plaintiff now seeks a preliminary injunction to enjoin Defendant from using the Marks.  Specifically, Plaintiff takes issue with Defendant's use of the phrase "Beverly Hills" in the stylized font designed by architect Paul Revere Williams (the "Williams Font") depicted in Registration No. 1516814 (the "Stylized Mark") and Defendant's use of the phrase "The Beverly Hills Hotel" regardless of the font.  (Motion at 5 n.1; *see also* Opp. at 2).  Plaintiff provides the following screenshots of Defendant's merchandise that allegedly infringes on the Marks:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-8005-MWF (KSx)                Date:  June 10, 2024
Title:    Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.



(Motion at 6).  Plaintiff also recently discovered that Defendant is selling an image, entitled *Beverly Hills Coconut* (pictured on the left in the following screenshot), that depicts the Stylized Font and is nearly identical to Plaintiff's photograph (pictured on the right):



(*Id.* at 8).

_____
                       **CIVIL MINUTES—GENERAL**                              3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 23-8005-MWF (KSx)          **Date:**  June 10, 2024
**Title:**     Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

## II.     LEGAL STANDARD

A party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in its favor; and (4) an injunction is in the public interest. *See Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)). These elements – referred to as the *Winter* factors – can be balanced on a sliding scale, allowing a preliminary injunction to issue where there are "serious questions going to the merits" and the balance of hardships "tips sharply towards the plaintiff," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1132–35 (9th Cir. 2011) (concluding that district courts may use a sliding-scale approach but requiring all four *Winter* factors to be met).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. It may take two forms. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal quotation marks and alteration omitted). A mandatory injunction orders a party to take action. *Id.* at 879. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (citing *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979)).

Here, Plaintiff seeks a prohibitory injunction because it merely seeks to enjoin the allegedly infringing conduct. *See* 4 McCarthy on Trademarks and Unfair Competition § 30:50 (5th ed.) ("A preliminary injunction that orders defendant to cease its use of the infringing mark is one that maintains the status quo prior to defendant's use and is not a mandatory injunction."); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (noting that the status quo refers to the time before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 23-8005-MWF (KSx) | Date: June 10, 2024 |
| Title: | Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al. | |

the defendant began its allegedly infringing conduct). Because Plaintiff seeks a prohibitory injunction, the Court need not apply a heightened standard of scrutiny.

## III. DISCUSSION

### A. Likelihood of Success on the Merits

To establish a likelihood of success on the merits in a trademark claim, a plaintiff must show (1) that it has a protected ownership interest in the mark at issue, and (2) that the defendant's use of the mark is likely to confuse consumers. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (internal citation omitted).

#### 1. Protected Ownership Interest in the Marks

"Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Id*. (citing 15 U.S.C. § 1115(a)). Here, there is no real dispute that Plaintiff owns the federally registered Marks. Nevertheless, Defendant raises two arguments contesting the registration.

First, as it did in its motion to dismiss, Defendant argues that the Marks are not protectable because they are aesthetically functional. (Opp. at 7). The Court rejects this argument for the same reasons discussed in the MTD Order. (*See* MTD Order at 5–6). Namely, Defendant fails to meet the two-step test for aesthetic functionality as articulated in *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006), because (1) the allegedly infringing merchandise would still function as intended without bearing the Marks; and (2) protecting the Marks does not impose any non-reputation-related competitive disadvantages.

Second, Defendant contends that the Lanham Act does not apply to the *Beverly Hills Coconut* artwork because it is an expressive work protected by the First Amendment. (Opp. at 7–8). In so arguing, Defendant relies on the *Rogers* test as adopted by the Ninth Circuit in *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 260–61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  CV 23-8005-MWF (KSx) | **Date:**  June 10, 2024 |
| **Title:** Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al. | |

(9th Cir. 2019) (citing *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1984)).  Plaintiff does not address the applicability of *Rogers* in its briefs.

Under the *Rogers* test, "the defendant must first make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment."  *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024) (internal quotation marks and citation omitted).  "If the defendant meets this burden, the Lanham Act does not apply unless the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work."  *Id.* (internal quotation marks and citation omitted).

The Supreme Court recently determined limited the applicability of the *Rogers* test, holding that it does not apply "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods."  *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153 (2023).  Subsequently, the Ninth Circuit recognized that "*Rogers* does not apply when a mark is used as a mark, [but] preexisting Ninth Circuit precedent adopting and applying *Rogers* otherwise remains intact."  *Punchbowl, Inc.*, 90 F.4th at 1031.

Here, the Court concludes that Defendant has failed to make a threshold showing that *Beverly Hills Coconut* is an expressive work entitled to protection under the First Amendment.  Defendant contends that *Beverly Hills Coconut* uses the Stylized Mark to accurately depict a pina colada sold by Plaintiff.  (*Id.* at 7).  But this is the exact kind of use the Supreme Court rejected in *Jack Daniel's*.  Because the artwork uses the Stylized Mark as a source identifier, the *Rogers* test is inapplicable.  *See Vans, Inc. v. MSCHF Product Studio, Inc.*, 88 F.4th 125, 138–39 (2d Cir. 2023) (affirming the district court's refusal to apply *Rogers* because the defendant used the plaintiff's trademarks in a source-identifying manner).

Accordingly, the Court proceeds to analyze Defendant's use of the Marks under the likelihood of confusion test.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-8005-MWF (KSx)          Date:  June 10, 2024
Title:   Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

### 2. Likelihood of Consumer Confusion

In evaluating the likelihood of confusion, the Court employs the eight-factor test articulated by the Ninth Circuit in *AMG Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979).  These factors are (1) the similarity of the marks; (2) the proximity of the goods covered by the marks; (3) the strength of the claimed mark; (4) similarity of marketing or advertising channels; (5) the degree of care likely to be exercised by the purchaser; (6) actual confusion over the marks; (7) the defendant's intent; and (8) likelihood of expansion of the product lines.  "At the preliminary injunction stage of a proceeding, the trial court is not required to consider all the factors set forth in *Sleekcraft*."  *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987).

### a. Similarity of the Marks

The similarity of marks is examined by the similarity of the "sight, sound, and meaning" of the marks.  *Network Automation*, 638 F.3d at 1150 (citing *Sleekcraft*, 599 F.2d at 351).  As the Ninth Circuit explained in *Pom Wonderful*, "[t]his factor is always important in determining whether a likelihood of confusion exists because when 'marks are entirely dissimilar, there is no likelihood of confusion.'"  775 F.3d at 1127 (quoting *Brookfield Commc'n v. West Coast Ent.*, 174 F.3d 1036, 1054 (9th Cir. 1999)).  Accordingly, as the similarities between two marks increase, so too does the likelihood of confusion.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).

In evaluating similarity, the following axioms guide the Court: (1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences.  *Pom Wonderful*, 775 F.3d at 1127–28 (citing *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002)).  In considering the marks' similarities, the Court does not dissect the marks, but considers the overall impression they give to consumers.  *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) ("[W]hat is critical is the overall

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-8005-MWF (KSx)                    Date:  June 10, 2024
Title:       Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks").

Defendant appears to concede that the parties' marks are similar. (Opp. at 11). In fact, the mark depicted in the *Beverly Hills Coconut* artwork appears to be identical to the Stylized Mark. With respect to Defendant's apparel, the parties' marks are similar in sight and sound as they both use the phrase "Beverly Hills" in the Williams Font as illustrated in the following screenshots:

 

Minor differences – namely, Defendant's omission of "The" and "Hotel" – fail to negate the overall impression of similarity between the two marks.

Nevertheless, Defendant argues that these similarities should be discounted because they can be attributed to the geographically descriptive nature of the Marks. (*Id.* at 11–12). Defendant is correct that when a portion of a mark is a generic identifier of the product, the commercial significance of that portion is discounted. *See Glow Indus. v. Lopez*, 273 F. Supp. 2d 1095, 1123 (C.D. Cal 2003) (discounting the word "kit" because it was generic and descriptive); *In re Chatam Int'l Inc.*, 380 F.3d 1340, 1342–43 (Fed. Cir. 2004) ("Because ALE [is a generic term and] has nominal commercial significance, the Board properly accorded the term less weight in assessing the similarity of the marks.").

While the phrase "Beverly Hills" on its own may be generic or descriptive, Defendant's argument ignores the crux of this action: Defendant's use of the phrase "Beverly Hills" ***specifically in the Williams Font*** as depicted in the Stylized Mark. "[T]rademark rights in the stylized appearance of a word are distinct from trademark rights in the word itself." *Time, Inc. v. Petersen Publ'g Co. LLC*, 173 F.3d 113, 119

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 23-8005-MWF (KSx)  **Date:**  June 10, 2024
**Title:**     Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

(2d Cir. 1999).  Accepting Defendant's argument would also require the Court to ignore the entirety of Defendant's mark as used on the apparel it sells.

Accordingly, the Court concludes that this factor – the similarity of the marks – weighs in favor of Plaintiff.

### b.  Proximity of the Goods

The second *Sleekcraft* factor considers the similarity of the goods provided by the parties.  This factor reflects the common-sense intuition that the danger of consumer confusion is heightened where goods are related or complimentary.  *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (citing *Sleekcraft*, 599 F.2d at 350).  "Related goods . . . are those which would be reasonably thought by the buying public to come from the same source if sold under the same mark."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012) (internal quotation omitted).  To satisfy this factor, parties do not need to be direct competitors, so long as the goods are similar in use and function.  *See Entrepreneur Media*, 279 F.3d at 1147 (explaining that goods are related when both companies offer products relating to the same general industry).

Defendant argues that its retail offerings are not related to "hotel and catering services."  (Opp. at 10).  In response, Plaintiff points to the fact that it also sells similar merchandise in its gift shop, including t-shirts, sweatshirts, and other apparel items depicting the Marks.  (Declaration of Brittany Williams ("Williams Decl.") (Docket No. 36-2) ¶ 17).

The Court agrees with Plaintiff and concludes that the two goods are clearly related, such that a consumer would be very likely to conclude that the two products come from the same source.  Although Defendant is correct that hotel services and apparel are distinct industries, the issue is not whether the two products can be distinguished, but whether the two products contain sufficient similarities for a consumer to assume they both came from the same source.

Accordingly, this factor weighs in favor of finding likelihood of confusion.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-8005-MWF (KSx)          Date:  June 10, 2024
Title:     Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

### c. Strength of the Marks

Strength of a mark can be measured by its "conceptual strength and commercial strength," with the former involving the mark's "inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) (internal citations omitted).

Defendant first argues that the Marks are weak because "Beverly Hills" is geographically descriptive. (Opp. at 9–10). But again, this argument ignores the fact that Plaintiff takes issue with Defendant's use of the phrase in the Williams Font.

Defendant next contends that the strength of the Marks is undercut by third-party use. (*Id.* at 10). In so arguing, Defendant appears to rely on its Counterclaims alleging that third parties have used the words "Beverly Hills" in the Williams Font. (*See* Counterclaim (Docket No. 24) ¶¶ 11, 25–26). While Defendant is correct that such an argument goes to the question of genericness, it requires the Court to engage in a factual inquiry at this early stage of the proceedings. Accordingly, the Court declines to consider the commercial strength of the Marks at the preliminary injunction stage given that this factor requires "an evidence-intensive inquiry." *Id*. at 1150.

Accordingly, this factor is neutral to the Court's analysis.

### d. Similar Marketing Channels

"In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130. "Marketing channels can converge even when different submarkets are involved so long as the general class of purchasers exposed to the products overlap." *Id.* (internal quotation omitted).

Plaintiff argues that the marketing channels overlap because both parties sell their products online. Plaintiff also points to Defendant's website, which touts its "impressive celebrity clientele such as Paris Hilton, Kate Beckinsale, Angelina Jolie,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 23-8005-MWF (KSx) | Date: | June 10, 2024 |
| Title: | Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al. | | |

[and] Janet Jackson." (Declaration of Peter B. Maretz ("Martez Decl.") (Docket No. 38-1) ¶ 3, Ex. B).

While the parties' use of the Internet merits "little weight" due to the ubiquity of online marketing, the Court concludes that Defendant's consumer base overlaps with Plaintiff's. *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004). Here, both parties purport to have celebrity clients. The Court is also persuaded by the geographical proximity of the customer bases since the parties sell apparel at their respective stores located in Beverly Hills.

Accordingly, this factor also weighs in favor of finding likelihood of confusion.

### e. Degree of Care

The next factor to be considered is the degree of care that a consumer is likely to exercise in purchasing the parties' products. The Court views the products from the standpoint of "typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353 (citing *HMH Publ'g Co. v. Lambert*, 482 F.2d 595, 599 n.6 (9th Cir. 1973)). It is generally assumed that sophisticated consumers and buyers of expensive goods will exercise greater care in their purchases, thereby reducing the likelihood of confusion or mistake as to the origin of the goods. *Entrepreneur Media*, 279 F.3d at 1152.

Defendant argues that consumers exercise greater care in purchasing its products because its clients are sophisticated and its products are "relatively expensive" (*i.e.*, $58 for a t-shirt sold by Defendant). (Opp. at 11). Plaintiff does not address this factor in its briefs.

Here, the Court cannot conclusively determine the degree of care a typical buyer would exercise. On one hand, both parties appear to agree that at least some of their consumers are sophisticated buyers, such as celebrities. On the other hand, the Ninth Circuit has acknowledged that "[n]o clear standard exists for analyzing moderately priced goods, such as non-designer clothing." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 23-8005-MWF (KSx) | **Date:** | **June 10, 2024** |
| **Title:** | Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al. | | |

Accordingly, this factor is neutral in the Court's analysis.

### f. Actual Confusion

The sixth factor under *Sleekcraft* is whether there is actual confusion between the marks. Actual confusion among consumers provides substantial evidence of a likelihood of confusion. *Network Automation*, 638 F.3d at 1151. At the preliminary injunction stage, however, this factor is generally not of significant relevance given the difficulty in proving actual confusion at this point in litigation. *See id*.

As evidence of actual confusion, Plaintiff proffers an email from a "patron" of the Beverly Hills Hotel, Robbie Anderson, informing Plaintiff's counsel that the Marks were "all over the place" at Defendant's Beverly Hills store. (Motion at 14; *see also* Williams Decl. ¶ 14, Ex. C).

In response, Defendant argues that nothing in the email suggests that Mr. Anderson was confused. Rather, according to Defendant, the email indicates that Mr. Anderson knew that the products were being sold by Defendant and believed that they infringed on the Marks. (Opp. at 12). Defendant also contends that Mr. Anderson is more than just a "patron." Defendant avers, and Plaintiff does not dispute, that Mr. Anderson is closely associated with Plaintiff, referring to himself as the "Official Historian for the Beverly Hills Hotel" and claiming that his grandparents were the founding proprietors of the Beverly Hills Hotel. (*Id.* at 13).

Because the record is so sparse and Plaintiff's evidence of actual confusion is disputed, the Court declines to give this factor any weight. *See id*. (affirming the district court's decision to accord no weight to evidence of actual confusion where the record was sparse); *Sleekcraft*, 599 F.2d at 352 (noting that "courts have often discounted such evidence [of actual confusion] because it was unclear or insubstantial").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-8005-MWF (KSx)          Date:  June 10, 2024
Title:  Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

### g. Defendant's Intent

Although a defendant is not necessarily culpable if it uses a trademark to compare products in advertising, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354; *see also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1962) (explaining that defendant's adoption of the "Black & White" mark used by a well-known whiskey company indicates that the brewing company expected confusion and resulting profit). Generally, however, the intent factor will be of minimal importance because intent can be hard to prove and "evidence of the defendant's intent to confuse customers . . . is not required for a finding of a likelihood of confusion." *Pom Wonderful*, 775 F.3d at 1131.

Plaintiff contends that Defendant intentionally used the Williams Font. (Motion at 12, 14). In so arguing, Plaintiff relies on an email from Fraser Ross, Defendant's owner. (Complaint, Ex. E). Specifically, the email states that Defendant "will sell through the product with the font [Plaintiff is] concerned with and change to another font. . . . The solution is to sell through the limited merchandise and change to many different fonts." (*Id.*). According to Plaintiff, this email shows that Defendant's owner was aware of the Marks and Plaintiff's "overall goodwill and iconic reputation." (*Id.* at 14).

In response, Defendant argues that its intent in selling products with the phrase "Beverly Hills" was to "promote the city of Beverly Hills due to [its] location." (Opp. at 13). Defendant also disputes Plaintiff's characterization of the email from Mr. Ross. (*Id.* at 14).

The Court concludes that this factor weighs in favor of Plaintiff because "[w]hen an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Indeed, as Plaintiff notes, Defendant has continued to sell the allegedly infringing merchandise even after Plaintiff sent a cease-and-desist letter. (*See* Reply at 5). Moreover, the marks are nearly identical, and Defendant sells the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-8005-MWF (KSx)          **Date:** June 10, 2024

**Title:**     Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

allegedly infringing products against a backdrop similar to the pink and green banana leaf wallpaper commonly associated with Plaintiff. (*See* Williams Decl. ¶¶ 16–17; Motion at 7). All this evidence suggests that Defendant intended to coopt Plaintiff's mark.

Accordingly, this factor also weighs in favor of finding likelihood of confusion.

### h. Likelihood of Expansion

The final *Sleekcraft* factor directs the court to consider the likelihood that one of the parties' product lines will expand to compete with the other. Again, evidence of product expansion is not required for a finding of likelihood of confusion. *Pom Wonderful*, 775 F.3d at 1131 (citing *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (characterizing the product expansion factor as "neutral" because neither party presented evidence regarding the likelihood of expansion)).

Plaintiff contends that this factor weighs in its favor because it has a pending trademark application for clothing and accessories. (Reply at 7). However, Plaintiff has provided no evidence of this pending trademark application. As such, the Court concludes that this evidence is, at best, neutral.

### i. Totality of the Factors

The foregoing analysis reveals that four factors weigh in favor of Plaintiff: similarity of the marks, proximity of the goods, marketing channel convergence, and Defendant's intent. The remaining four factors are neutral: strength of the mark, degree of care, actual confusion, and likelihood of expansion.

As explained in *Pom Wonderful*, "[s]heer numerosity of *Sleekcraft* factors . . . is not by itself dispositive of the ultimate likelihood-of-confusion determination." 775 F.3d at 1132 (citing *Goss*, 6 F.3d at 1395). The Court must instead consider the factors taken together, and in context. *See id.*; *Entrepreneur Media*, 279 F.3d at 1140 (while the *Sleekcraft* analysis guides the Court, "the totality of facts in a given case that is dispositive").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-8005-MWF (KSx)                    Date:  June 10, 2024
Title:      Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

Here, in considering the totality of the circumstances, the Court determines that Plaintiff is likely to succeed on the merits, as consumers are likely to be confused regarding the source of Defendant's allegedly infringing merchandise.  Defendant's products not only bear a mark that is nearly identical to the Marks but also are related to the goods sold by Plaintiff to the same general class of consumers.  To the extent that Plaintiff does not sell comparable goods to those sold by Defendant (i.e., handguns), the nearly identical nature of the parties' marks and the proximity of their businesses on their own suggest that consumer confusion is likely.  Therefore, the Court concludes that Plaintiff's likelihood of success on its trademark infringement claim weighs in favor of granting a preliminary injunction.

On a final note regarding the likelihood of success factor, the Court acknowledges that the Answer raises an affirmative defense regarding fair use.  (*See* Answer at 6).  However, the record does not currently establish that defense, nor was it argued in the briefs.  Accordingly, the Court declines to address fair use in the context of this Motion.

### B.    Likelihood of Irreparable Harm

A plaintiff is entitled to a rebuttable presumption of irreparable harm where a court finds a likelihood of success on the merits upon a motion for preliminary injunction.  *See* Trademark Modernization Act., Pub. L. 116-260 § 226(a).  A "[d]elay in seeking a preliminary injunction 'tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial.'"  4 McCarthy on Trademarks and Unfair Competition § 30:48.50 (5th ed.) (internal citations omitted); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.).

Defendant argues that Plaintiff's delay in seeking an injunction rebuts its presumption of irreparable harm.  (Opp. at 16).  Defendant appears to take issue with Plaintiff's failure to move for a preliminary injunction until April 30, 2024 – nearly seven months after initiating this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-8005-MWF (KSx)            **Date:** June 10, 2024
**Title:**      Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

Defendant is correct that such a delay would ordinarily weigh against issuing a preliminary injunction. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (affirming denial of preliminary injunction due to a five-month delay). However, the Court declines to find that Plaintiff delayed filing the Motion for three reasons:

***First***, Defendant is partially responsible for the delay insofar as it sought who sought an extension to respond to the Complaint. (*See* Docket No. 13). *See Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 508 (9th Cir. 1991) (excusing a six-month delay between filing the complaint and moving for the preliminary injunction because it was caused, in part, by defendant's request for extensions).

***Second***, the delay is not unreasonable in light of the procedural history. Plaintiff arguably did not seek a preliminary injunction while Defendant's motion to dismiss was pending because dismissal would obviate the need for an injunction. (*See* Docket No. 14). Plaintiff was also required to timely respond to Defendant's counterclaims once the Answer was filed. (*See* Docket Nos. 24, 27, 35).

***Third***, the Ninth Circuit has emphasized that "delay is but a single factor to consider in evaluating irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (citation omitted). "[I]ndeed, courts are loath to withhold relief *solely on that ground*." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

The Court therefore concludes that this factor also weighs in favor of a preliminary injunction.

### C.     Balance of Equities

A court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. An injunction may not issue unless the balance of the hardships tips in favor of the moving party. "[A] court must remain free to deny a preliminary injunction, whatever be the showing of likelihood of success, when equity in the light

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-8005-MWF (KSx)                    Date:  June 10, 2024
Title:       Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

---

of all the factors so requires."  *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 877 F. Supp. 2d 838, 916 (N.D. Cal. 2012).

On one hand, Plaintiff argues that it will continue to suffer damage to its reputation, in which it invested significant time and resources, if the Court denies injunctive relief.  (Motion at 15).

On the other hand, Defendant argues that it will lose its market share to other third-party sellers of Beverly Hills-themed clothing if the Court grants the Motion. (Opp. at 18).  Defendant further contends that it would suffer greater hardship due to its relatively smaller size if the Court were to grant a preliminary injunction.  (*Id.* at 17).

Defendant is correct that the Court may consider the relative sizes of the respective businesses in balancing the hardships.  *See Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 726 (9th Cir. 1985) (observing that "the relative size of the respective businesses . . . is certainly relevant to the potential hardship" of complying with an injunction); *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) (providing that, in analyzing the balance of hardships, "the relative size and strength of each enterprise may be pertinent").  But, as Plaintiff correctly notes, a preliminary injunction would not foreclose Defendant from selling merchandise depicting the phrase "Beverly Hills" in a different font.  (*See* Motion at 15).  And although the Court recognizes the potential monetary harm to Defendant, "the injury a defendant might suffer if preliminarily enjoined may be discounted by the fact that the defendant brought that injury upon itself."  4 McCarthy on Trademarks and Unfair Competition § 30:51 (5th ed.) (internal citations omitted).

Accordingly, the Court concludes that this factor also weighs in favor of a preliminary injunction.

### D.     Public Interest

Finally, courts "must consider the public interest as a factor in balancing the hardships when the public interest may be affected."  *Caribbean Marine Servs. Co. v.*

---

**CIVIL MINUTES—GENERAL**                                                                                 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 23-8005-MWF (KSx)          **Date:** June 10, 2024
**Title:**     Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC, et al.

*Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused." *CytoSport*, 617 F. Supp. 2d at 1081. As such, the public interest is generally favored by enforcement of trademark rights as they prevent confusion as to the source of a product or service. *See Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178 (C.D. Cal. 2017) (citing *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005)). Here, because the Court already determined that there is a likelihood of confusion between the parties' products, the public interest would be served by an injunction.

## IV. CONCLUSION

In sum, the Court concludes that Plaintiff has satisfied the four elements necessary—likelihood of success on the merits, irreparable harm, balance of hardships, and public interest—to support granting a preliminary injunction. Federal Rule of Civil Procedure 65 provides that the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined[.]" Fed. R. Civ. P. 65(c). The Court is not required to order a bond nor has Defendant requested one to be issued.

Accordingly, the Motion is **GRANTED**.

A separate Preliminary Injunction shall issue.

IT IS SO ORDERED.